EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Amy Ramírez Kurtz, Roberto José Ramírez Kurtz, Arelene Divina Ramírez Kurtz, Lydia Edith Ramírez Kurtz, Marta Ramírez Kurtz, Ricardo José Ramírez Kurtz, Mary Jo Ramírez Kurtz, Débora  Ramírez Kurtz, Ramírez-Marini Development, Corp. <br><br> Peticionarios <br><br> v. <br><br> Jimmy Damiani Ramos, Wilmarie Torres Valle y la Sociedad Legal de Gananciales compuesta por ambos <br><br> Recurridos | Certiorari <br><br> 2024 TSPR 97 <br><br> 214 DPR ___ |

Número del Caso:  CC-2023-0217


Fecha:  6 de septiembre de 2024


Tribunal de Apelaciones:

    Panel VI


Representante legal de la parte peticionaria:

    Lcdo. Jorge O. Sosa Ramírez


Materia: Procedimiento Civil – Recurso de *Injunction* para vindicar una servidumbre en equidad; posterior tramitación de una acción de daños y perjuicios por difamación mediante un procedimiento ordinario.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Amy Ramírez Kurtz, Roberto José Ramírez Kurtz, Arelene Divina Ramírez Kurtz, Lydia Edith Ramírez Kurtz, Marta Ramírez Kurtz, Ricardo José Ramírez Kurtz, Mary Jo Ramírez Kurtz, Débora Ramírez Kurtz, Ramírez-Marini Development, Corp.<br><br>Peticionarios<br><br>v.<br><br>Jimmy Damiani Ramos, Wilmarie Torres Valle y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos | CC-2023-0217 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 6 de septiembre de 2024.

En esta ocasión tenemos la oportunidad de evaluar el proceder del Tribunal de Apelaciones al confirmar la determinación del Tribunal de Primera Instancia mediante la cual desestimó un recurso de *Injunction* y consideró improcedente la celebración de una vista porque de la faz de la solicitud del interdicto surgía que el remedio solicitado carecía del elemento de daño irreparable. A su vez, nos corresponde determinar si en una petición de *Injunction* por violaciones a una servidumbre en equidad se puede dilucidar una causa de acción de daños y perjuicios.

Por los fundamentos que expondremos resolvemos que, de ordinario, el foro primario deberá celebrar una vista con el fin de evaluar los requisitos sustantivos y procesales para vindicar una servidumbre en equidad. No obstante, en estos casos, se puede conceder un *Injunction* preliminar sin la celebración de una vista, si la parte promovente demuestra la probabilidad de prevalecer mediante prueba documental fehaciente que acredite la existencia de la servidumbre en equidad. Asimismo, ante la solicitud de un remedio adicional que la ley provee procede que, una vez se resuelva la procedencia o no del recurso interdictal, las controversias restantes, de haberlas, se dilucidarán mediante el procedimiento ordinario.

I

La Sra. Amy Ramírez Kurtz, el Sr. Roberto José Ramírez Kurtz, la Sra. Arlene Divina Ramírez Kurtz, la Sra. Lydia Ramírez Kurtz, la Sra. Edith Ramírez Kurtz, la Sra. Marta Ramírez Kurtz, el Sr. Ricardo José Ramírez Kurtz, la Sra. Mary Jo Ramírez Kurtz, la Sra. Deborah Ramírez Kurtz (los Ramírez Kurtz) y Ramírez-Marini Development, Corp. (Development), (peticionarios) presentaron el 23 de noviembre de 2021 una Demanda en el Tribunal de Primera Instancia Sala Superior de Mayagüez, sobre sentencia declaratoria, *Injunction* preliminar y permanente, libelo y daños y perjuicios en contra del Sr. Jimmy Damiani Ramos, la Sra. Wilmarie Torres Valle y la Sociedad Legal de Gananciales compuesta por ambos (recurridos).

Las partes son dueños de distintos solares. Por un lado, los Ramírez Kurtz son dueños en común proindiviso de los solares 8, 9 y 10 que son parte de la finca 21,279 de Cabo Rojo.

Entretanto, Development es dueña de los solares 1, 2, 5 y 6 que son parte de la finca 7,253 de Cabo Rojo.

Por otro lado, se alegó que los recurridos son dueños del solar núm. 7 y que este se encuentra ubicado en el mismo lugar de los solares de los peticionarios. Afirmaron que los recurridos adquirieron este solar del Sr. Roberto Rodríguez Plaza mediante Escritura Núm. 394 de *Compraventa* el 30 de diciembre de 2009, ante el notario Héctor A. Rodríguez Figueroa. Adujeron que sobre estos solares se establecieron unas limitaciones de uso y construcción. En lo pertinente a la controversia que nos ocupa, las restricciones de uso y de construcción son las siguientes:

E. **Queda <u>expresamente prohibido el estacionamiento</u> en las calles** o solares del proyecto de todo tipo de **<u>vehículos de arrastre</u>** ("Trailers"), casas rodantes, "campers", **<u>embarcaciones</u>**, incluyendo "Jét-Skies", camiones vehículos chocados, abandonados o irreparables, "truck", "tractors"; vehículos, equipo o máquinas de construcción, excepto cuando éstos se estén utilizando en algún tipo de reparación o construcción en cuyo caso se permitirá el estacionamiento por un tiempo razonable.

F. **Queda <u>expresamente prohibido en todas las áreas</u>** del proyecto cualquier tipo de **rótulo, anuncios, <u>letreros</u>** o **propaganda de cualquier clase.**[1]

Los peticionarios alegaron que los recurridos mantenían estacionada una embarcación en la calle donde ubican los solares gravados con la servidumbre en equidad, ocupando el uso público de la vía en perjuicio de los titulares de los solares. A su vez, arguyeron que los recurridos colocaron un letrero frente a su propiedad que lee como sigue:

AVISO IMPORTANTE SI USTED VA A INVERTIR AQUÍ TOME EN CUENTA QUE: LOS POZOS NO FILTRAN ZONA INUNDABLE NO SE LES DA MANTENIMIENTO A LOS TERRENOS SU RESIDENCIA SERÁ

---

[1] Petición de *Certiorari*, Apéndice, págs. 26 y 27.

VELADA, RETRATADA CONTINUAMENTE POR LOS VENDEDORES O ANTIGUOS DUEÑOS PARA MÁS INFORMACIÓN 787-[…].[2]

Los peticionarios anejaron en la demanda fotografías relacionadas al estacionamiento de la embarcación y al letrero en cuestión para comprobar que los recurridos violaron las restricciones de uso. Asimismo, incluyeron la Escritura Núm. 30 de Compraventa de 29 de noviembre de 2007 otorgada ante el notario Frank M. Ramírez Ramírez, cuando el Sr. Roberto Rodríguez adquirió el solar afectado con las restricciones de uso y construcción. Finalmente, se incluyó documentación gubernamental con la finalidad de demostrar que la información contenida en el letrero no era cierta y, por lo tanto, libelosa.

Ante este hecho, reclamaron que las expresiones expuestas por los recurridos en el letrero les han provocado daños emocionales y expusieron que estas han causado y continúan causando daños económicos ante la imposibilidad de vender los solares pues, desde entonces, el flujo de potenciales compradores de los solares había mermado.

Los recurridos, al contestar la demanda, negaron muchas de las alegaciones y, entre las defensas afirmativas que formularon, plantearon que no existía una relación contractual entre las partes, que cumplieron con todas las condiciones en la escritura de compraventa de su propiedad y no procede el reclamo de angustias mentales o daños emocionales solicitado por los peticionarios.[3]

---

[2] Petición de *Certiorari*, Apéndice, pág. 47.

[3] *Íd.*, págs. 53-54.

Así las cosas, mediante una moción, los peticionarios solicitaron un *Injunction* preliminar y permanente en la que adoptaron, por referencia, las alegaciones realizadas en la demanda. Mediante este mecanismo, solicitaron al foro primario que le ordenara a los recurridos que cesaran y desistieran de estacionar la embarcación en la vía pública y que les ordenara la eliminación del letrero que contenía la información libelosa en violación, además, de las restricciones de uso. A su vez, solicitaron al Tribunal de Primera Instancia que le concediera los daños reclamados por el contenido en el letrero.

Pese a los planteamientos de los peticionarios, el Tribunal de Primera Instancia emitió un dictamen mediante el cual denegó el *Injunction* preliminar y concluyó "que de la faz del recurso mismo surge la improcedencia del *Injunction* solicitado, lo cual hace innecesario la celebración de una vista".[4]

Los peticionarios presentaron una *Moción de reconsideración y solicitud de determinaciones de hechos iniciales.*[5] A juicio de los peticionarios, el Tribunal de Primera Instancia resolvió contrario a lo resuelto por esta Curia en *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310,

---

[4] Petición de *Certiorari*, Apéndice, págs. 56-62. Destacamos que inicialmente el Tribunal de Primera Instancia emitió una *Sentencia parcial* que fue objeto de revisión ante el Tribunal de Apelaciones, pero el recurso se desestimó por falta de jurisdicción. No obstante, posteriormente, el foro primario nuevamente notificó la *Sentencia parcial enmendada*, pues en la primera ocasión no se incluyeron las palabras sacramentales de la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V.

[5] Petición de *Certiorari*, Apéndice, págs. 68-76.

326 (2021).[6] No obstante, el foro primario no reconsideró su postura, por lo que declaró "NO HA LUGAR" la petición.[7]

Inconformes, los peticionarios acudieron ante el Tribunal de Apelaciones y, en esencia, señalaron que el foro primario erró al desestimar parcialmente el *Injunction* preliminar sin señalar ni conceder una vista para examinar la prueba anejada con la demanda y al no brindarle una evaluación adecuada a las alegaciones al momento de desestimar. Sin embargo, con un razonamiento similar, el foro apelativo intermedio confirmó el dictamen apelado.

Los peticionarios presentaron una *Moción de reconsideración.* En respuesta, el foro apelativo intermedio emitió una *Sentencia enmendada* para añadir que, con relación a la alegación de la violación de la servidumbre en equidad por el alegado estacionamiento del bote, los apelantes no pusieron en posición al foro primario para que este concediera el remedio solicitado,[8] por lo que se mantuvo el dictamen apelado.

Aun en desacuerdo, los apelantes presentaron ante esta Curia el recurso de *Certiorari* que nos ocupa. Expusieron que el foro apelativo intermedio erró al confirmar al Tribunal de Primera Instancia en cuanto a la desestimación del *Injunction* preliminar sin celebrar vista ni tomar como ciertos los hechos en la demanda. Asimismo, consideraron que el foro apelativo intermedio erró al concluir que el *Injunction* no es el vehículo

---

[6] *Íd.*, págs. 68-69.

[7] Petición de *Certiorari*, Apéndice, pág. 81.

[8] *Íd.*, pág. 116.

procesal para reclamar una violación a las servidumbres en equidad en la que, además, se aleguen daños.[9]

Luego de evaluar los alegatos de las partes, nos encontramos en posición de resolver, no sin antes exponer el derecho aplicable a la controversia planteada.

## II

*A. Servidumbres en equidad o restricciones de uso*

Sabido es que la servidumbre en equidad es una figura jurídica que proviene del derecho anglosajón y que este Tribunal la adoptó hace más de un siglo en *Glines et al. v. Matta et al.*, 19 DPR 409 (1913).[10] Se define como "las condiciones o restricciones que limitan el uso de determinados terrenos y mediante las cuales se imponen cargas o gravámenes que obligan a presentes y futuros adquirentes".[11] En otras palabras, con estos gravámenes se limita el derecho de propiedad.[12]

---

[9] Petición de *Certiorari*, Apéndice, pág. 9.

[10] Destacamos que al probarse la Ley Núm. 55-2020 conocida como el Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5311 *et seq.* (Código Civil de 2020), las servidumbres en equidad dejaron de ser una institución fundamentada en la equidad cuando se codificó bajo el nombre de *Restricciones voluntarias* en el Art. 813 del Código Civil, 31 LPRA sec. 8081. Véase, Exposición de Motivos, Código Civil de 2020, *supra*. De hecho, las restricciones voluntarias sobre la finca están reguladas por los artículos 813 hasta el 819 del Código Civil de 2020, 31 LPRA secs. 8081 a 8087. Ahora bien, debido a que del expediente surge que la servidumbre en equidad o restricciones de uso que se invocan en el presente caso se pactaron antes de la aprobación del Código Civil de 2020, aplicaremos la norma concerniente a la servidumbre en equidad. Véase Arts. 1812 y 1813 del Código Civil 19, 31 LPRA secs. 11717 y 11718.

[11] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 326 (2021); *Park Tower, S.E. v. Registradora*, 194 DPR 244, 252 (2015); *Residentes Parkville v. Díaz*, 159 DPR 374, 382-383 (2003); *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 534 (2002); M.J. Godreau y A.I. García Saúl, *Servidumbres y conservación*, 67 (Núm. 2) Rev. Jur. UPR 249, 301-302 (1998).

[12] *Dorado del Mar Estates Homeowners Association, Inc. v. Weber et als.*, 203 DPR 31, 42 (2019). También se conocen como condiciones restrictivas o restricciones voluntarias.

El propósito principal de instituir una restricción de uso es "preservar la belleza, la comodidad y la seguridad del reparto residencial".[13] La regla general es que "el urbanizador de una finca las constituye unilateralmente sobre [la propiedad] para restringir las facultades de todo futuro adquirente respecto al inmueble gravado".[14] En cuanto a su constitución, hemos expresado que "[p]ara que una propiedad inmueble se grave válidamente mediante una servidumbre en equidad, sus cláusulas restrictivas deben constar en una escritura pública y, según se ha señalado ya, deben inscribirse en el Registro de la Propiedad".[15] Lo importante es que "al determinar [el alcance y] la designación de un 'uso' es que, mediante el lenguaje utilizado, *se le informe debidamente y sin ambigüedades a los nuevos adquirentes y terceros, sobre lo que se les está o no está permitido realizar*".[16] Así, "tanto los nuevos adquirentes como los terceros sepan a qué atenerse con respecto a las limitaciones impuestas a su derecho de propiedad".[17] Por lo tanto, esta "limitación debe constituir un aviso suficiente y adecuado, de manera que toda persona, al adquirir alguna de tales propiedades, pueda tomar una decisión informada antes de advenir dueño".[18]

---

[13] *Dorado del Mar Estates Homeowners Association, Inc. v. Weber et als.*, supra, pág. 43.

[14] *Íd.*, págs. 42-43.

[15] *Residentes Parkville v. Díaz*, supra, pág. 384.

[16] (Énfasis en el original). *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, págs. 538-539.

[17] *Íd.*, pág. 539.

[18] *Íd.*

A pesar de que su constitución puede realizarse por un acto unilateral por parte del desarrollador, las servidumbres en equidad se consideran un contrato de naturaleza real entre las partes.[19] Es decir, las condiciones restrictivas son parte inherente del contrato de compraventa de un solar o una propiedad afectado por estas.[20] A su vez, son parte del valor que compra el adquirente de la residencia y por el cual paga, por lo que, justificadamente, este tiene la expectativa de que las condiciones sean respetadas. Esto ocurre "ya sea porque las partes acuerdan gravar su propiedad para limitar su uso o porque, a sabiendas de las restricciones inscritas en el Registro de la Propiedad, adquieren la propiedad gravada, aceptando así someterse a estas".[21] Por lo tanto, "[c]uando una persona tiene pleno conocimiento de las limitaciones de uso de una propiedad, nunca debe permitírsele llevar a cabo la conducta o actuación prohibida por tales restricciones".[22]

B. *El Injunction para vindicar las restricciones de uso*

En *Glines et al. v. Matta et al.*, supra, también reconocimos que el dueño de un predio puede hacer valer sus derechos o impedir la violación de las condiciones restrictivas

---

[19] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, supra, pág. 328; *Dorado del Mar v. Weber et als.*, supra, pág. 43; *Asociación Playa Húcares v. Rodríguez*, 167 DPR 255, 264 (2006); *Residentes Parkville v. Díaz*, supra, pág. 384.

[20] *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, pág. 539; *Sands v. Ext. Sagrado Corazón, Inc.*, 103 DPR 826, 831 (1975).

[21] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, supra; *Dorado del Mar v. Weber et als.*, supra; *Asociación Playa Húcares v. Rodríguez*, supra; *Residentes Parkville v. Díaz*, supra.

[22] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, supra, *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, pág. 536; *Rodríguez et al. v. Gómez et al.*, supra, pág. 312.

que lo gravan y que el mecanismo apropiado para hacerlo es el *Injunction*.[23]

En una demanda de *Injunction* el promovente tiene que demostrar la validez y vigencia de las cláusulas restrictivas. Las servidumbres en equidad serán válidas y eficaces si estas cumplen con los requisitos sustantivos siguientes: "(1) las limitaciones deben ser razonables; (2) deben establecerse como parte de un plan general de mejoras; (3) deben constar de forma específica en el título de la propiedad, y (4) deben inscribirse en el Registro de la Propiedad".[24]

Ahora bien, luego de que el Tribunal de Primera Instancia valide la existencia de estos requisitos y constate la efectividad de la constitución de la servidumbre en equidad, para que procesalmente proceda un *Injunction* al amparo de esta figura, el Tribunal de Primera Instancia debe tomar en cuenta los requisitos que establecimos en *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304 (2008) y estos son los siguientes:

> [(1)] la naturaleza de los daños que pueden ocasionárseles a las partes; [(2)] la probabilidad

---

[23] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, supra, pág. 328; *Dorado del Mar v. Weber et als.*, supra, pág. 43; *Asoc. v. Villa Caparra v. Iglesia Católica*, 117 DPR 346, 353-354 (1986); *Colón v. San Patricio Corporation*, 81 DPR 242, 254 (1959). *Rodríguez et al. v. Gómez et al.*, supra, pág. 312. Hemos expresado que "[c]ontra dicho recurso, la parte demandada puede oponer todas las defensas que le otorgan los principios en equidad, a saber: 1) *consentimiento*, defensa que procede invocarla cuando el demandante ha permitido que otras personas violen las restricciones, siempre que esas violaciones sean de carácter sustancial y permanente (*acquiescence*); 2) *consciencia impura*, procede cuando el demandante que pretende poner en vigor una condición la ha violado de forma reiterada (*unclean hands*); 3) *incuria*, aplica cuando el demandante incurre en falta de diligencia y tardíamente pretende poner en vigor la restricción en un momento en que la parte demandada ya ha actuado de forma tal que resultaría inútil y hasta opresivo para esta hacerla cumplir con la condición (*laches*), y 4) *impedimento*, cuando el demandante —al instar el recurso— actúa en una forma que resulta ser incompatible con sus actos y conductas anteriores (*estoppel*). Véase J.R. Vélez Torres, Los bienes: los derechos reales, San Juan, 1995, T. II, pág. 418". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, supra, esc. 9, pág. 328.

[24] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC,* supra, pág. 327.

de que la parte promovente prevalezca en los méritos; [(3)] la probabilidad que la causa se torne académica y [(4)] el posible impacto sobre el interés público. Además, [(5)] los tribunales deberán examinar el tiempo que tardó el peticionario en presentar su reclamo y [(6)] el efecto del tiempo en los intereses de las partes según la justicia social.[25]

Estos criterios son una guía sobre la discreción de los tribunales al atender una solicitud de *Injunction* como la que nos ocupa.[26] Mediante estos indicadores, el foro primario procurará garantizar "al reclamante pero no oprimir al demandado o causarle innecesarias dificultades".[27] Igualmente, los requisitos no se instituyeron en el vacío, sino que consideramos que había que preservar la riqueza de algunos de los criterios adoptados para la adjudicación de un *Injunction* preliminar al amparo de la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V.[28] Asimismo, vislumbramos que el remedio se ajustaba más a la Regla 56 de Procedimiento Civil, *supra*, toda vez que esta se "asentó en nuestro ordenamiento el *Injunction* preliminar como un mecanismo en aseguramiento de sentencia que está disponible en todo tipo de pleito, sin importar la naturaleza de la obligación de la que se trate".[29]  Por eso determinamos que la Regla 56.5

---

[25] *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.*, supra, págs. 324-325.

[26] *Íd.*, pág. 324.

[27] *Íd.*

[28] *Íd.*

[29] *Íd.*, pág. 317. Sobre el particular expresamos "[a]l igual que todos los mecanismos en aseguramiento de sentencia, siempre que se cumpla alguna de las excepciones dispuestas en la Regla 56.3 [de Procedimiento Civil, 32 LPRA Ap. V], se puede conceder sin necesidad de prestar fianza". *Íd.* Es decir, "la Regla 56.3[(a)], supra, permite conceder dicho remedio sin exigir la prestación de fianza cuando obren en autos documentos públicos que acrediten la existencia de una obligación legalmente exigible. En el presente caso, la escritura pública que evidencia la existencia de la servidumbre en equidad y las certificaciones registrales del predio en controversia, son documentos públicos firmados ante una persona

de Procedimiento Civil, *supra*, es la regla procesal aplicable para vindicar una servidumbre en equidad, pues una concesión de este remedio puede limitar de manera provisional el derecho a la libre disposición de los bienes de la parte que resulta afectada por la orden de hacer o desistir de hacer.[30]

Cuando delimitamos los contornos de la concesión o denegatoria del interdicto, reiteramos que, en un pleito como el presente, el promovente no tiene que demostrar la existencia o la inmediatez del daño irreparable[31] ni la ausencia de remedio en ley que exige el *Injunction* extraordinario regulado en la Regla 57 de Procedimiento Civil, *supra*. Esto se debe a que vindicar una servidumbre en equidad mediante una solicitud de *Injunction* lo que procura es obligar a la parte demandada al cumplimiento del contrato de carácter real que le afecta a las partes. Por lo tanto, "[b]asta probar la violación de la servidumbre para que se justifique la utilización del *Injunction*, ello sin necesidad de que se prueben daños reales o perjuicios sustanciales".[32]

Por otro lado, la Regla 56.5 de Procedimiento Civil, *supra*, establece que, de ordinario, no se puede conceder el remedio interdictal al amparo de esta norma procesal sin que se haya cumplido con los requerimientos de notificación que exige

---

autorizada para administrar juramento. Éstas acreditan la existencia de una obligación legalmente exigible, la cual además es oponible [a terceros]". *Íd.*, pág. 333.

[30] Véase *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.,* supra, pág. 324.

[31] *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ*., supra, pág. 321; *Asoc. Vec. Urb. Huyke v. Bco. Santander,* supra, pág. 537; *Colón v. San Patricio Corporation*, supra, pág. 259.

[32] *Asoc. Vec. Urb. Huyke v. Bco. Santander,* supra; *Colón v. San Patricio Corporation*, supra.

la Regla 56.2 de Procedimiento Civil, *supra*, y sin que se celebre una vista sobre la solicitud del remedio. A modo de excepción, la Regla 56.5 de Procedimiento Civil, *supra*, permite la concesión de una orden de hacer o desistir de hacer cuando, antes de notificarse y de que el foro primario celebre la vista sobre la petición, la parte promovente demuestre la probabilidad de prevalecer mediante prueba documental fehaciente.[33] "[L]a parte afectada por una orden de hacer o desistir de hacer, tendrá derecho a una notificación adecuada *y a la celebración de una vista*".[34]

Finalmente, si solo se solicita vindicar la servidumbre en equidad, huelga "estimar si existen otros remedios, pues el remedio que procede es el *Injunction*".[35] Sin embargo, nada impide que se exijan otros remedios. Veamos.

---

[33] La Regla 56.5 de Procedimiento Civil, supra, gobierna las órdenes para hacer o desistir de hacer y, específicamente, establece: "No se concederá ninguna orden bajo esta Regla 56.5 para hacer o desistir de hacer cualquier acto específico sin una notificación a la parte adversa, **a menos que** aparezca claramente de los hechos específicos acreditados por declaración jurada que el solicitante sufrirá perjuicios, daños o pérdidas irreparables, o que **se demuestre** la existencia de circunstancias extraordinarias o **que tenga la probabilidad de prevalecer mediante prueba documental fehaciente, antes de notificarse y de celebrarse una vista sobre la solicitud**. Dicha orden *ex parte* será efectiva al notificarse. Cualquier parte afectada podrá, en cualquier tiempo, presentar una moción para que se modifique o anule la orden y dicha moción se señalará para vista en la fecha más próxima posible, nunca más tarde de cinco (5) días de haberse presentado la moción, y tendrá precedencia sobre todos los demás asuntos. A los propósitos de dicha vista, una notificación de dos (2) días a la parte que obtuvo la orden, o la notificación más corta que el tribunal prescriba, será suficiente". (Énfasis suplido).

[34] (Énfasis suplido). *Asoc. Vec. v. Caparra v. Asoc. Fom. Educ.*, supra, pág. 326.

[35] *Íd.*, págs. 324-325. A su vez, hemos expresado: "**[E]l injunction preliminar deja de ser subsidiario frente a otros remedios en ley como por ejemplo un remedio en daños. En esa medida el injunction preliminar se convierte en un remedio usual** que se divorcia de los requisitos tradicionales asociados a la dicotomía entre ley y equidad, y adquiere una flexibilidad que lo desvincula de dicho pasado". (Énfasis suplido).

*C.   Daños como remedio adicional al Injunction*

Antes de  que estableciéramos los criterios discutidos, en *Residentes Parkville v. Díaz,* 159 DPR 374 (2003), este Tribunal reconoció que en un pleito para hacer valer las servidumbres en equidad mediante el mecanismo de *Injunction*, también se puede conceder un remedio en daños. En ese caso, la solicitud de indemnización en daños emanaba de la escritura constitutiva de las limitaciones de uso. Es decir, el instrumento público expresamente disponía que además del *Injunction*, se podía hacer una reclamación en daños. Así, resolvimos que:

> "Son dos, pues, los intereses a proteger; son dos las faltas que ha sufrido el reclamante. Por ello, son dos los remedios a los cuales tiene derecho. A esos efectos, resolvemos que como norma general no existe razón alguna para negarle a las partes ambos remedios, *Injunction* y daños".[36]

Además de aceptar la posibilidad de reclamar los daños, intimamos la existencia de la concurrencia de acciones, por lo que un promovente puede presentar una causa de acción *ex contractu* por los daños y perjuicios ocasionados a causa del incumplimiento con las restricciones de uso al amparo del Art. 1054 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 3018 y, por el otro, una acción *ex delicto* conforme al Art. 1802 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 5141 por los daños ocasionados a causa de la conducta desplegada por los demandados.[37]

---

[36] *Residentes Parkville v. Díaz*, supra, pág. 394.

[37] *Residentes Parkville v. Díaz*, supra, pág. 394 y esc. 10. El Art. 1054 del Código Civil de Puerto Rico de 1930, 33 LPRA ant. sec. 3018 establecía "quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieran al tenor de aquellas". En la actualidad las acciones *ex contractu* surgen del Art. 1158 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9303.

*D. Concurrencia de acciones*

Este Tribunal se ha expresado en reiteradas ocasiones sobre la concurrencia de acciones *ex contractu* y *ex delictu.*[38] Una causa de acción *ex contractu* se refiere a los daños procedentes del incumplimiento de un contrato y aplica cuando la reclamación se fundamenta en el quebrantamiento o incumplimiento de una obligación contractual.[39] Con esta causa de acción se gestiona la indemnización de daños precedidas de "una relación jurídica entre las partes concernidas".[40]

Por otro lado, la culpa extracontractual que conlleva a una acción *ex delito* se deriva del incumplimiento de la regla cardinal de no causar daño a los demás.[41] Este tipo de acción se encontraba preceptuada en el Art. 1802 del Código Civil de 1930, *supra*, y se distingue porque la responsabilidad respecto a la persona perjudicada no exige la existencia de una relación jurídica entre las partes involucradas.[42]

Ambas acciones pueden concurrir si el hecho que causa el daño es, a la vez, un incumplimiento contractual y una violación al deber general de no causar daño a otro.[43] En una eventualidad,

---

Entretanto, el Art. 1802 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5141, disponía lo siguiente: "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". En la actualidad las acciones *ex delicto* están reguladas por el Art. 1536 del Código Civil de 2020, 31 LPRA sec. 10801.

[38] *Consejo de Titulares v. Mapfre*, 208 DPR 761, 780 (2022).

[39] *Íd., pág.* 781.

[40] *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 909 (2012).

[41] Íd, pág. 908. Destacamos que dicho principio también se le conoce como principio de *alterum non laedere.*

[42] *Íd.*

[43] *Consejo de Titulares v. Mapfre*, supra, pág. 781.

lo que procede es que la parte promovente de la causa de acción tendrá que escoger cuál de estas acciones le ayuda a vindicar sus derechos.[44] Esto se debe a que "no se autoriza la duplicidad de remedios".[45] Por ello, "[e]l análisis por los tribunales de la aplicación de la teoría de la concurrencia de acciones en cada caso va a depender de las figuras jurídicas en juego".[46] De este modo, el foro primario deberá examinar "las alegaciones contenidas en la demanda. Finalmente, la selección por el perjudicado de una de las acciones disponibles se deducirá de sus alegaciones y la prueba que presente".[47]

III

En el presente caso debemos determinar si el Tribunal de Apelaciones erró al confirmar la desestimación de un *Injunction* preliminar sin la celebración de una vista porque, según concluyó, el daño irreparable reclamado por los peticionarios era especulativo y no podía cuantificarse.

Surge del expediente con meridiana claridad que los peticionarios alegaron que los recurridos violentaron la servidumbre en equidad cuando estos colocaron un letrero y estacionaron la embarcación en la vía pública donde ubican los solares afectados por las limitaciones de uso. Es incuestionable que los peticionarios presentaron el recurso de *Injunction* para

---

[44] *Ramos Lozada v. Orientalist Rattan Furniture, Inc.,* 130 DPR 712, 726-728 (1992).

[45] *Consejo de Titulares del Condominio Balcones de San Juan v. MAPFRE Praico Insurance Company*, 208 DPR 761, 783-784 (2022).

[46] *Consejo de Titulares del Condominio Balcones de San Juan*, supra, pág. 780.

[47] *Consejo de Titulares del Condominio Balcones de San Juan*, supra; *Maderas Tratadas v. Sun Alliance et al.*, supra, págs. 912-913; *Márquez v. Torres Campos*, supra; *González v. Centex Const. Co., etc.*, supra, pág. 86.

vindicar las condiciones restrictivas y, con ello, procuraban que el foro primario le ordenara a los recurridos que cesaran y desistieran de su conducta porque esos actos son contrarios a lo estipulado en la servidumbre en equidad.

A su vez, afirmaron que los actos de los recurridos les estaban ocasionando daños emocionales y económicos, toda vez que señalaron que el contenido del letrero era difamatorio y falso y que, como consecuencia de ello, las llamadas respecto a los posibles compradores habían mermado significativamente. Por lo tanto, sostuvieron que, conforme hemos resuelto, podían solicitar la indemnización de los daños y perjuicios por difamación.

En apoyo a su contención, los peticionarios presentaron junto a su demanda jurada los documentos siguientes: la Escritura Núm. 30 de *Segregación y Compraventa* mediante la cual el Sr. Roberto Rodríguez Plaza adquirió el solar núm. 7, donde si bien se establece la existencia de las condiciones restrictivas sobre uso y construcción, no surge del estudio de título que el notario tuvo ante sí la advertencia que la propiedad está afecta por una servidumbre en equidad; fotos de la embarcación en un vehículo de arrastre en la calle; fotos del letrero que, según se alegó, los recurridos colocaron en su propiedad que enfocan el alegado mensaje libeloso; y documentos gubernamentales para, de alguna manera, rebatir lo expuesto en el letrero.

Por otro lado, y sintetizamos, los recurridos negaron la existencia de las restricciones de uso sobre los solares; negaron que le hubiesen comprado el solar núm. 7 mediante la Escritura Núm. 394 a su dueño anterior, es decir, al Sr. Roberto Rodríguez

Plaza; negaron que las expresiones del letrero fueran falsas y difamatorias y que estas les estuvieran causando un daño irreparable; negaron, por desconocimiento, que el solar núm. 7 estuviera ubicado con el resto de los solares. Finalmente, no negaron ni admitieron que les perteneciera el número telefónico contenido en el letrero ni que la violación perjudica el derecho de los peticionarios y, con ello, se afecte la venta de los solares.

A pesar de las alegaciones de las partes y de la documentación presentada, el foro primario determinó "que de su faz el recurso mismo surge la improcedencia del *Injunction* solicitado, lo cual hace innecesario la celebración de una vista".[48] En otras palabras, el caso se atendió como si se tratara de una solicitud de interdicto regulado únicamente por el Código de Enjuiciamiento Civil y la Regla 57 de Procedimiento Civil, *supra*. Con la consecuencia de que el foro primario se limitó a considerar el cumplimiento con los requisitos del *Injunction* que exige la Regla 57.3 de Procedimiento Civil, *supra*, especialmente, la existencia de un daño irreparable y ausencia de un remedio adecuado en ley.

A nivel apelativo aconteció que, pese a que los peticionarios reiteraron su postura, en reconsideración, el foro apelativo intermedio enmendó la sentencia para expresar que, con relación al asunto del estacionamiento de la embarcación, estos no pusieron al foro primario en posición para concluir las alegadas infracciones a las restricciones de uso. Nótese que el

---

[48] Petición de *Certiorari*, Apéndice, págs. 56-62.

foro apelativo intermedio no consideró el planteamiento de los peticionarios respecto al letrero que colocaron los recurridos ni al daño alegado que les ha causado y les continúa causando el contenido de este.

A raíz de las alegaciones de las partes y los documentos presentados, el foro primario debió celebrar una vista para dilucidar los planteamientos de las partes, examinar los elementos sustantivos de las restricciones de uso y el cumplimiento de los criterios que desarrollamos en *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ., supra.* Sin embargo, recalcamos que el caso se atendió como si se tratara de una solicitud de interdicto regulado únicamente por el Código de Enjuiciamiento Civil y la Regla 57 de Procedimiento Civil, supra.

Por el marco legal discutido, resolvemos que en un caso como el presente, el foro primario deberá celebrar una vista con el fin de evaluar los requisitos sustantivos y procesales para vindicar una servidumbre en equidad. No obstante, se puede conceder un *Injunction* preliminar sin la celebración de una vista, si la parte promovente demuestra la probabilidad de prevalecer mediante prueba documental fehaciente que acredite la validez de la servidumbre en equidad.

Por último, ante la solicitud de un remedio adicional en daños y perjuicios, corresponde que, una vez se resuelva la procedencia o no del recurso de *Injunction*, se deben atender los méritos del reclamo mediante el procedimiento ordinario.

Por lo tanto, en este caso, luego de que el Tribunal de Primera Instancia celebre la vista y culmine con el trámite y remedio interdictal, si procede, la causa de acción de daños y

perjuicios por difamación en su vertiente de libelo deberá tramitarse en el procedimiento ordinario.[49]

IV

Por los fundamentos aquí expuestos revocamos al Tribunal de Apelaciones, y a su vez, se devuelve el caso al Tribunal de Primera Instancia para que continúe los procesos conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[49] Esto es cónsono con la Orden Administrativa OAJP-2017-021 sobre la *Implantación de las funcionalidades de presentación y notificación electrónica en las Salas de Asuntos de lo Civil del Centro Judicial de San Juan* emitida el 16 de junio de 2017 por la Jueza Presidenta, Hon. Maite D. Oronoz Rodríguez, así como del Memorando Núm. 122, emitido en esa misma fecha por el Director Administrativo de los Tribunales, Hon. Sigfrido Steidel Figueroa. Mediante la referida orden se dispone que, una vez resuelta la solicitud de un remedio interdictal, todas las controversias restantes, de haberlas, pudieran ser referidas a la sala de lo civil competente para el trámite ordinario. Esto incluye las causas de acción de daños y perjuicios.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Amy Ramírez Kurtz, Roberto José Ramírez Kurtz, Arelene Divina Ramírez Kurtz, Lydia Edith Ramírez Kurtz, Marta Ramírez Kurtz, Ricardo José Ramírez Kurtz, Mary Jo Ramírez Kurtz, Débora Ramírez Kurtz, Ramírez-Marini Development, Corp.<br><br>Peticionarios<br><br>v.<br><br>Jimmy Damiani Ramos, Wilmarie Torres Valle y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos | CC-2023-0217 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 6 de septiembre de 2024.

Por los fundamentos antes expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, revocamos al Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que continúe los procesos conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez concurre y emite la expresión siguiente:

Estoy de acuerdo con el resultado al que llega la mayoría de mis compañeros y compañera. Sin embargo, por entender que porciones del derecho incluido son inaplicables y no abonan a la resolución puntual de la controversia ante nuestra consideración, concurro.

El Juez Asociado señor Colón Pérez concurre y se une a la expresión emitida por la Jueza Presidenta Oronoz Rodríguez.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo