ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| **MÓNICA LONGO MARRERO y otro**<br><br>Apelado<br><br>v.<br><br>**PR ALPHA INVESTMENTS, LLC y otros**<br><br>Apelante | KLAN202401093 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil Núm.: **DO2022CV00004**<br><br>Sobre: Interdicto Posesorio Preliminar y Permanente |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Pérez Ocasio[2]

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 15 de mayo de 2025.

PR Alpha Investments, LLC y Rick Shrotri (en conjunto, "los apelantes"), nos solicitan que revoquemos la *Sentencia Parcial* emitida el 29 de octubre de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón. Mediante la misma, el TPI declaró con lugar la solicitud de sentencia sumaria presentada por Dorado Beach East Homeowners Association, Inc. (en adelante "la Asociación") y José Velázquez (en adelante "señor Velázquez") y, en consecuencia, desestimó con perjuicio la causa de acción instada contra estos.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Parcial* apelada.

---

[1] *Véase* OAJP-2021-086 de 4 de noviembre de 2021.
[2] En virtud de la *Orden Administrativa OATA-2025-019* de 10 de febrero de 2025, el Juez Pérez Ocasio sustituyó a la Jueza Rivera Pérez quien cesó de ejercer funciones como Jueza del Tribunal de Apelaciones.

## I.

El 14 de enero de 2022, la Lcda. Mónica Longo Marrero y su madre, la Sra. María Socorro Marrero (en conjunto, "las demandantes") incoaron una *Demanda de Injunction* en contra de PR Alpha Investments, LLC, Rick Shrotri (en adelante "señor Shrotri"), Dorado Beach East Homeowners Association, Inc., José Velázquez, entre otros.

En síntesis, en la demanda alegaron que la Lcda. Longo Marrero era la titular de la propiedad inmueble identificada como #395 de la Urbanización Dorado Beach East en Dorado, Puerto Rico, y que sobre la propiedad existía una servidumbre pluvial y de mantenimiento establecida a su favor sobre el solar #394. A esos efectos, las demandantes plantearon que el señor Shrotri construyó una pared de concreto sobre el terreno y la pared de la propiedad de la Lcda. Longo Marrero, la cual rompió la estructura de la marquesina y de uno de los cuartos de la residencia. Por ello, solicitaron al tribunal, *inter alia*, que ordenara la reparación del desagüe de su propiedad y que les impusiera a las partes demandadas el pago de una cantidad no menor de un millón de dólares en concepto de daños y perjuicios.

Posteriormente, el 6 de marzo de 2023, PR Alpha Investments, LLC y Rick Shrotri (en conjunto, "los apelantes") presentaron *Contestación a la Demanda Enmendada de Injunction y Reconvención*. Mediante su escrito, afirmaron que la Lcda. Longo Marrero tenía conocimiento de que el señor Shrotri interesaba construir un muro de cemento y, a su vez, aseguraron que esta había aprobado su construcción.

Una vez culminado el descubrimiento de prueba, el 28 de junio de 2024, la Asociación y el señor Velázquez presentaron *Moción Solicitando Sentencia Sumaria Parcial*. En esta aseguraron que no existía controversia, según fue admitido por las

demandantes, en cuanto a que la Asociación y el señor Velázquez no aprobaron la construcción del muro o participaron de su construcción. Manifestaron que los apelantes no siguieron el procedimiento establecido por la escritura de condiciones restrictivas y el Reglamento de *"Requisitos y procedimientos para la construcción de mejoras a la propiedad"* del Comité Arquitectónico de Dorado Beach East, el cual expresamente establecía que todo proponente de una construcción debía solicitar la autorización de la Asociación y del Comité de Arquitectura previo a realizar el proyecto.

En desacuerdo, el 22 de julio de 2024, las demandantes, presentaron *Moción en Oposición a "Solicitud de Sentencia Sumaria Parcial".* Argumentaron que conforme a lo planteado por PR Alpha Investments, LLC y el señor Shrotri durante todo el proceso judicial surgía que existía controversia en cuanto a si la Asociación les había brindado permiso a los apelantes para la construcción del muro de concreto entre las propiedades y en cuanto a si el señor Velázquez les había dado instrucciones o recomendaciones para la referida construcción.

Asimismo, el 15 de agosto de 2024, los apelantes instaron *Oposición a "Moción de Sentencia Sumaria Parcial" de Dorado Beach East Homeowners Association y José Velázquez, y Solicitud de Sentencia Sumaria Determinando que las Obras Fueron Realizadas.* En esta indicaron que habían recibido la autorización verbal de la Asociación para realizar obras de emergencia, entre las cuales se encontraba: remover los árboles de ficus, reparar la servidumbre pluvial de la propiedad de las demandantes y construir el muro colindante entre ambas propiedades. En la alternativa, manifestaron que mediante las acciones de la Asociación tuvieron la creencia razonable de que estaban autorizados.

Luego de varios trámites procesales y evaluadas las posturas de las partes, el 29 de octubre de 2024, notificada el 6 de noviembre

de 2024, el TPI emitió la *Sentencia Parcial* que hoy revisamos. Mediante la sentencia apelada, el foro primario declaró Ha Lugar la moción para que se dictara sentencia sumaria presentada por la Asociación y el señor Velázquez y desestimó la causa de acción en contra de estos, con perjuicio.

En su dictamen, el TPI expresó que era un hecho incontrovertido que los apelantes no habían solicitado a la Asociación ni al Comité Arquitectónico los permisos para realizar la construcción del muro. El foro primario puntualizó que, aun cuando los apelantes informaron a la Asociación mediante correo electrónico que realizarían la construcción de un muro entre ambas propiedades, este correo nunca fue contestado. Por tanto, determinó que no existía prueba que demostrara que la Asociación o el señor Velázquez habían autorizado la construcción del muro y expresó que, en consecuencia, no podía adjudicarles culpa por una construcción que fue realizada sin los correspondientes permisos por el señor Shrotri.

Insatisfechos, el 6 de diciembre de 2024, PR Alpha Investments, LLC y Rick Shrotri recurrieron ante este foro revisor señalando los siguientes errores:

> *Erró el TPI al conceder la moción en solicitud de sentencia sumaria presentada por la Asociación de Residentes de Dorado Beach a pesar de existir hechos materiales que están en controversia relacionados a la autorización de Dorado Beach para la construcción del muro de colindancia.*
>
> *Erró el TPI al no aplicar a los hechos del caso el derecho relacionado a las servidumbres en equidad y las condiciones restrictivas y al no aplicar la doctrina de actos propios toda vez que la Asociación apelada renunció a hacer valer sus condiciones restrictivas cuando permitió [al] apelante completase las obras de construcción sin objetar oportunamente a las mismas, autorizó las mismas a través del inspector, admite que conocía de las obras y no las detuvo, y está impedida de ir contra sus propios actos.*

El 2 de enero de 2025, la Asociación y el señor José Velázquez presentaron su *Alegato en Oposición a Recurso de Apelación.* Luego,

ese mismo día, la Lcda. Mónica Longo Marrero y su madre, la Sra. María Socorro Marrero, comparecieron mediante *Alegato en Oposición a Apelación.*

Con el beneficio de la comparecencia de todas las partes, estamos en posición de resolver.

**II.**

**A**.

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Consejo de Titulares Cond. Millenium v. Roca Develpment,* 2025 TSPR 6, 215 DPR ___ (2025); *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* 2025 TSPR 1, 215 DPR ___ (2025); *Serrano Picón v. Multinational Life Ins,* 212 DPR 981(2023).[3] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas,* 193 DPR 100, 112 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601, 610 (2023).

---

[3] Véase, además: *Oriental Bank v. Caballero García,* 212 DPR 671 (2023); *Ferrer et. al. v. PRTC,* 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687, 698 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales

que están en disputa. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión,* supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4.

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas,* supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma

alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Consejo de Titulares Cond. Millennium v. Roca Development,* supra; *Ex Parte Tomas Pérez y otro*, 2025 TSPR 5, 215 DPR ___ (2025); *BPPR v. Cable Media*, supra; *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024); *Meléndez González v. M. Cuebas*, supra, págs. 118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

### B.

Las restricciones voluntarias sobre fincas de carácter real, antes conocidas como servidumbres en equidad, son aquellas limitaciones de uso, construcción, y ornato o fines análogos que se imponen a las fincas. 31 LPRA sec. 8081. Nuestro Código Civil de 2020 estableció que para que las restricciones voluntarias sobre

predios sean válidas y eficaces contra todos es necesario que cumplan con los siguientes requisitos: 1) las limitaciones deben ser razonables, 2) obedecer a un plan general de mejoras, 3) constar de manera específica en un instrumento público y 5) estar inscritas en el Registro de la Propiedad. 31 LPRA sec. 8082. Dicha figura jurídica es de carácter constitutivo, por lo que su validez depende de que las cláusulas restrictivas se hagan constar en escritura pública y la misma se inscriba en el Registro de la Propiedad. Es decir, las restricciones voluntarias son un contrato privado de naturaleza real, pues una vez inscrito, las condiciones impuestas en el referido contrato constituyen derechos reales oponibles *erga omnes. Ramírez Kurt v. Damián Ramos*, 2024 TSPR 97, 214 DPR ___ (2024); *Asociación Playa Húcares v. Rodríguez,* 167 DPR 255, 264 (2006).

Esto significa que, el conocimiento de las limitaciones y condiciones impuestas en virtud de las restricciones voluntarias se imputa a todo presente y futuro adquirente de la propiedad que éstas gravan. *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 327-328 (2021). Por lo que, "[c]uando una persona tiene pleno conocimiento de las limitaciones de uso de una propiedad, nunca debe permitírsele llevar a cabo la conducta o actuación prohibida por tales restricciones". *Asoc. de Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 536 (2002).

En Puerto Rico, las restricciones voluntarias se utilizan mayormente para asegurar la conservación de la configuración arquitectónica o urbanística de los proyectos residenciales. Su propósito principal es preservar el valor, la belleza, la comodidad y la seguridad del reparto residencial. *Morales et al., v. Asociación de Propietarios*, 2024 TSPR 61, 213 DPR __ (2024). Este tipo de gravamen, aunque puede ser impuesto unilateralmente por el dueño urbanizador de una finca, es considerado como un contrato entre las partes, ya sea porque estas acuerdan gravar las propiedades

para delimitar su uso o el tipo de edificación que se pueden construir sobre ellas, o porque los futuros adquirentes de la propiedad ya gravada, al conocer de las restricciones inscritas en el Registro de la Propiedad, aceptan someterse a estas. *Asociación Playa Húcares v. Rodríguez, supra*, pág. 263; *Residentes Parkville v. Díaz*, 159 DPR 374, 384 (2003).

### III.

En su primer señalamiento de error, los apelantes alegan que erró el TPI al conceder la moción en solicitud de sentencia sumaria presentada por la Asociación a pesar de existir hechos materiales que están en controversia relacionados a la autorización para la construcción del muro de colindancia. Añaden que la prueba documental presentada demuestra que la Asociación permitió o no intervino con la realización de las obras aun cuando estas se realizaron a plena luz del día y a su ciencia y paciencia. Además, aducen que, la Asociación, admitió que tenía conocimiento de que se estaban realizando las obras y que, en lugar de detenerlas, se limitaron a documentar el asunto. En particular, plantean que: (1) el 10 de diciembre de 2021, el señor Shrotri le informó a la Asociación el alcance del proyecto de construcción; (2) que la autorización de emergencia se dio directamente a los apelantes y así se le informó a la Lcda. Longo Marrero; (3) que creyeron de buena fe haber obtenido las autorizaciones requeridas de la Asociación y la Lcda. Longo y; (4) que el señor Velázquez autorizó verbalmente la construcción de emergencia y fue quien guió a los trabajadores sobre cómo proceder debido a la naturaleza urgente de la situación. Basado en lo anterior los apelantes arguyen que la prueba contradice la conclusión del foro primario de que actuaron sin autorización.

Mediante su segundo señalamiento de error, los apelantes plantean que el foro primario incidió al no aplicar a los hechos del

caso el derecho relacionado a las servidumbres en equidad. Asimismo, sostiene que erró al no aplicar la doctrina de actos propios toda vez que la Asociación renunció a hacer valer sus condiciones restrictivas al permitir que los apelantes completasen las obras de construcción sin objetar oportunamente.

Entienden los apelantes que la evidencia presentada demuestra que la Asociación renunció a hacer valer sus condiciones restrictivas mediante una serie de actos afirmativos. A saber, que el señor Shrotri mantuvo conversaciones con el señor Velázquez dirigidas a obtener la autorización para realizar los trabajos de emergencia y que, luego de obtenida la autorización verbal, la Asociación estuvo al tanto del progreso de la construcción. Por lo que enfatizan que bajo la doctrina de actos propios la Asociación no puede utilizar las condiciones restrictivas para evadir su responsabilidad y trasladarla a los apelantes, quienes sostienen actuaron como edificantes de buena fe.

De otra parte, las demandantes, aquí apeladas, sostienen que, de acuerdo con la documentación presentada con la moción dispositiva de la Asociación y el señor Velázquez, los argumentos expuestos por los apelantes son improcedentes en derecho. A grandes rasgos, argumentan que el señor Shrotri conocía cual era el proceso establecido para solicitar autorización para efectuar trabajos de construcción. Añaden que ninguno de los documentos presentados por los apelantes controvierte el hecho de que no sometieron su proyecto al Comité de Arquitectura a través de la oficina de la administración de Dorado Beach East. Por tanto, arguyen que los apelantes nunca obtuvieron autorización para la obra y que, en consecuencia, el foro primario tampoco cometió el segundo error señalado.

De igual manera, la Asociación y el señor Velázquez, plantean que, previo a la construcción del muro, la Asociación no recibió los

planos correspondientes para la evaluación del Comité de Arquitectura según requiere la escritura de condiciones restrictivas. Además, reiteraron que las comunicaciones presentadas por los apelantes únicamente hacían referencia a la reparación de una tubería de drenaje y que, aun cuando los apelantes sostuvieron que la construcción del muro se hizo a ciencia y paciencia de la Asociación, lo cierto es que este fue construido durante el período de receso navideño. Por lo que concluyeron que los apelantes nunca fueron autorizados a construir el muro colindante entre la propiedad 394 y la propiedad 395.

Por tratarse de una sentencia sumaria, esta Curia debe evaluar *de novo* las solicitudes a favor y en contra de tal proceder, en unión a la documentación que surge del expediente. Adelantamos que, luego de un análisis detenido del expediente, así como de la normativa aplicable, concluimos que los errores señalados por los apelantes no se cometieron. Por tanto, no incidió el foro primario al conceder el remedio sumario en cuestión. Veamos.

De los autos ante nuestra consideración se desprende que la Asociación y el señor Velázquez anejaron a su solicitud de sentencia sumaria suficiente evidencia documental para probar cada una de sus alegaciones, por lo que demostraron que no existían hechos materiales controvertidos que impidieran que el TPI dispusiera del asunto de forma sumaria.

Según expuesto, es un hecho incontrovertido que la Asociación no fue consultada ni informada de la construcción de un muro de concreto en la propiedad de la Lcda. Longo Marrero previo a la construcción de este. A raíz de ello, es un hecho incontrovertido además que la Asociación tampoco autorizó a los apelantes a construir el muro colindante entre las propiedades de la Lcda. Longo Marrero y el señor Shrotri.

No nos convencen las alegaciones de los apelantes en cuanto a que la Asociación y el señor Velázquez autorizaron la construcción del muro de concreto entre las propiedades. Estos aducen que actuaron bajo el consentimiento verbal de la Asociación y el señor Velázquez o, en la alternativa, bajo la confianza de que estaban autorizados conforme a las propias acciones de estos. No obstante, el expediente es claro en evidenciar que, las propiedades de la urbanización Dorado Beach East están sujetas a unas condiciones restrictivas, las cuales imponen una serie de requisitos previo a realizar obras.

Surge que, en virtud de las referidas condiciones, se constituyó un comité de control arquitectónico y se adoptó una serie de requisitos y procedimientos para la construcción de mejoras a las propiedades de la urbanización, los cuales hacen obligatorio que los residentes, previo a realizar obras, sometan todos los documentos pertinentes para ser evaluados y aprobados por el comité. A su vez, de la prueba presentada se desprende que los apelantes únicamente recibieron autorización para realizar las reparaciones referentes a la tubería de drenaje. Cónsono con lo anterior, no podemos concluir que la Asociación y el señor Velázquez autorizaron en forma alguna la construcción de la pared de concreto sobre el terreno y la pared de la propiedad de la Lcda. Longo Marrero. De forma que, las alegaciones de las demandantes no establecen un nexo causal que permita establecer que los daños alegados por la referida construcción se deben a la culpa o negligencia de la Asociación y el señor Velázquez. Por tanto, somos del criterio de que no se cometieron los errores señalados.

Debido a que de la prueba presentada surge que los apelantes llevaron a cabo la construcción del muro de concreto entre la propiedad de la Lcda. Longo Marrero y el señor Shrotri sin obtener previamente los permisos requeridos por la Asociación, procede

confirmar la *Sentencia Parcial* apelada y, en consecuencia, desestimar con perjuicio la causa de acción contra la Asociación y el señor Velázquez.

## IV.

Por los fundamentos antes esbozados, ***confirmamos*** la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones