Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| ASOCIACIÓN DE EMPLEADOS GERENCIALES DE LA CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO (AEGCFSE) Y OTROS <br><br> Apelante <br><br> v. <br><br> CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO Y OTROS <br><br> Apelada | KLAN202401009 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan <br><br> Sobre: *Injunction* (Entredicho Provisional, *Injunction* Preliminar y Permanente), Sentencia Declaratoria <br><br> Caso Núm.: SJ2024CV07247 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de enero de 2025.

La parte apelante, Asociación de Empleados Gerenciales de la Corporación del Fondo de Seguro del Estado (AEGCFSE) y el señor José E. Ortiz Torres, por sí y en calidad de Presidente de la entidad, comparece ante nos para que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 25 de septiembre de 2024, notificada el 26 de septiembre de 2024. Mediante la misma, el foro primario declaró *No Ha Lugar* una solicitud de interdicto preliminar y permanente y una petición de sentencia declaratoria promovida en contra de la parte apelada, la Corporación del Fondo de Seguro del Estado (Fondo) y de su Administrador, el señor Noé Marcano Rivera.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

Número Identificador

SEN2025 _____

**I**

El 5 de agosto de 2024, la parte apelante presentó la acción civil de epígrafe. Mediante la misma, solicitó al tribunal primario que decretara la nulidad del proceso efectuado por la Junta de Gobierno del Fondo (Junta) para la creación del puesto de Coordinador(a) Interagencial, así como la convocatoria CFSE05-25, emitida el 19 de julio de 2024, para fines del aludido reclutamiento. En el pliego, alegó que la creación del puesto en controversia constituyó una acción *ultra vires* por parte de la entidad apelada, toda vez que incumplía con las disposiciones de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 LPRA sec. 1 *et seq.,* según enmendada, así como con lo establecido en el Reglamento de Personal para los Empleados Gerenciales de la Corporación del Fondo de Seguro del Estado, Reglamento Núm. 6226 de 6 de noviembre de 2000. En específico, argumentó que la acción agencial en disputa, inobservaba las exigencias establecidas en el Plan de Clasificación y Retribución para Empleados Gerenciales en el Servicio de Carrera, conforme establecido en el Artículo 11 del Reglamento Núm. 6226, *supra*, ello, en cuanto los criterios de uniformidad y trato igual y justo, propios al principio del mérito. La parte apelante añadió que, tras la aprobación del puesto en cuestión, el mismo fue sujeto a ciertas enmiendas que, igualmente, no se ajustaban a los requisitos reglamentarios establecidos, particularmente los relacionados a la estructura retributiva y jerárquica del Plan de Clasificación y Retribución vigente en el Fondo. A tenor con ello, afirmó que el puesto de Coordinador(a) Interagencial y la convocatoria CFSE05-25, fueron creados y autorizados de manera ilegal, ello por haberse obviado los procesos aplicables, según establecidos por ley y reglamento. De este modo, solicitó al Tribunal de Primera Instancia que emitiera un interdicto preliminar y una sentencia declaratoria,

a los fines de decretar la nulidad de la creación del puesto en disputa y de detener la convocatoria, esto, para evitar el reclutamiento para el aludido puesto.

Tras los procesos de rigor, el 21 de agosto de 2024, el Fondo presentó una *Moción de Desestimación*. En particular, argumentó que la petición de la parte apelante incumplía con los criterios procesales para la expedición de un remedio interdictal, según estatuidos por el ordenamiento procesal vigente, y que carecía de legitimación para reclamar la existencia de un daño resultante de la creación del puesto objeto de litigio. A su vez, planteó que procedía decretarse la desestimación de la causa de epígrafe, ello por razón de falta de jurisdicción. Al abundar, expuso que, dado a que la reclamación de autos estaba predicada en una alegada violación al principio del mérito, era la Agencia, y no el tribunal, quien ostentaba la autoridad primaria para dirimir el asunto. En apoyo a su argumento, expuso que el Reglamento Núm. 6226, *supra*, creó la Junta de Apelaciones del Fondo, como un organismo apelativo dentro de la Agencia al haber de los empleados gerenciales. Ello, con el propósito de, entre otras facultades, atender y disponer de toda controversia o decisión del Administrador, relacionada a alegadas violaciones sobre áreas esenciales al principio del mérito. Relacionado a lo anterior, expuso que el Reglamento de la Junta de Apelaciones de Empleados Gerenciales de la Comisión del Fondo de Seguro del Estado de 31 de agosto de 1999, expresamente arrogaba jurisdicción a la Junta de Apelaciones para atender las apelaciones promovidas por los empleados gerenciales respecto a, entre otras, las decisiones el Administrador de carácter disciplinario, a aquellas vinculadas con el principio del mérito, controversias sobre la adjudicación de plazas y alegaciones de violaciones al Reglamento Núm. 6226, *supra*. De esta forma, expresó que la parte apelante

debió haber agotado los remedios administrativos de los cuales disponía, previo a acudir al auxilio de la maquinaria judicial.

En su solicitud de desestimación, el Fondo también planteó que el mecanismo interdictal y el de sentencia declaratoria, en los términos peticionados por la parte apelante, eran improcedentes en derecho, toda vez que no se estableció la probabilidad de sufrir un daño, de no concederlos, ni la inexistencia de otro remedio adecuado en ley que dispusiera de la cuestión planteada. Así, amparado en la corrección de su postura, el Fondo solicitó al Tribunal de Primera Instancia la desestimación con perjuicio de la acción civil de epígrafe.

El 10 de septiembre de 2024, la parte apelante presentó su escrito de *Oposición a Moción de Desestimación*. En esta ocasión, sostuvo que, contrario a lo alegado por el Fondo, el estado de derecho le reconocía legitimación para, como asociación, incoar una acción judicial para reclamar los daños sufridos causados a la agrupación, por causa de una transgresión a los derechos derivados de las normas reglamentarias de personal, así como al principio del mérito. Del mismo modo, y en cuanto al argumento sobre falta de jurisdicción del tribunal, la parte apelante invocó las excepciones establecidas a la doctrina de agotamiento de remedios administrativos, según estatuidas en la Sección 4.3 de Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley 38-2017, 3 LPRA sec. 9673. Al respecto, indicó que, dada la naturaleza de los derechos involucrados en la disputa, agotar los remedios administrativos resultaba oneroso e inadecuado, razón por la cual su comparecencia al foro de justicia estaba legitimada. Así, y tras reafirmarse en los argumentos de su petición, la parte apelante solicitó que se denegara la desestimación solicitada y se procediera con el curso de los trámites de su reclamo.

El 26 de septiembre de 2024, el Tribunal de Primera Instancia notificó la *Sentencia* aquí apelada. Mediante la misma, concluyó que, como cuestión de derecho, la solicitud de interdicto promovida por la parte apelante era improcedente, toda vez la efectiva existencia de un remedio, de naturaleza agencial, que proveía para disponer de la controversia entre las partes. Según expresó, las alegaciones de la parte apelante estaban enmarcadas en una presunta violación a los términos del Reglamento Núm. 6226, *supra*, ello en torno a asuntos relacionados al principio del mérito y a la estructura retributiva establecida para el personal gerencial en puestos de carrera. El tribunal sentenciador sostuvo que, a tenor con la letra del precitado Reglamento, la Junta de Apelaciones se creó con el fin de atender toda controversia, queja o querella resultantes de una alegación sobre violación a derechos en áreas esenciales del principio del mérito. Añadió que, de igual modo, el Artículo 5 del Reglamento de la Junta de Apelaciones de Empleados Gerenciales, *supra*, señala al referido organismo intermedio como el foro adjudicativo disponible para apelar las decisiones emitidas por el Administrador del Fondo sobre alegadas violaciones al principio del mérito y a asuntos relacionados. A tenor con ello, el Tribunal de Primera Instancia dispuso que, dado a que la parte apelante tenía a su alcance el procedimiento administrativo dispuesto por Reglamento, los méritos de la controversia de epígrafe debían dilucidarse ante la Junta de Apelaciones. De este modo, y tras aclarar que su pronunciamiento no atendía la corrección, o no, del quehacer administrativo impugnado, el Juzgador declaró *No Ha Lugar* la solicitud de interdicto preliminar y permanente en cuestión. Igualmente, y en una nota al calce, declaró *Ha Lugar* la solicitud de desestimación promovida por el Fondo, amparándose en las disposiciones de las Reglas 10.2 y 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 y 42.2.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 12 de noviembre de 2024, la parte apelante compareció ante nos mediante el presente recurso de apelación. En el mismo formula los siguientes señalamientos:

> Erró el Tribunal de Primera Instancia al determinar que la Junta de Apelaciones de la CFSE (JACFSE) tiene jurisdicción primaria exclusiva y al no concluir que el tribunal tiene jurisdicción concurrente sobre la controversia.

> Erró el Tribunal al desestimar la sentencia declaratoria como causa de acción sin emitir fundamentos jurídicos que justifiquen su archivo.

Luego de examinar el expediente de autos, procedemos a expresarnos a tenor con la norma aplicable.

**II**

**A**

El recurso extraordinario de *injunction* es un mandamiento judicial en virtud del cual se requiere que se ordene a una persona que se abstenga de hacer, o de permitir que se haga, determinada cosa que infrinja o perjudique el derecho de otra. Art. 675, del Código de Enjuiciamiento Civil de PR, 32 LPRA sec. 3521. El mismo fue adoptado del sistema de equidad inglés y se utiliza, principalmente, en casos donde no hay otro remedio adecuado en ley, todo con el fin de evitar la ocurrencia de un daño inminente. *Plaza Las Américas v. N & H,* 166 DPR 631, 643 (2005).

Nuestro ordenamiento jurídico distingue tres modalidades del recurso de *injunction,* a saber: el entredicho provisional, el *injunction* preliminar y el *injunction* permanente. *Next Step Medical v. Bromedicon et al.,* 190 DPR 474, 485-486 (2014). En lo pertinente, el *injunction* preliminar es el remedio provisional emitido en cualquier momento de un pleito, luego de la celebración de una vista en la que las partes puedan presentar prueba en apoyo a su argumento. Su fin medular es mantener sin alteración la situación planteada, hasta tanto culmine el juicio en su fondo. La orden de

*injunction* preliminar evita que la conducta del demandado convierta en académica la sentencia o que ocasione daños mayores a quien lo solicita durante la pendencia del litigio. *Mun. Ponce v. Gobernador,* 136 DPR 776, 784 (1994).

La Regla 57.3 de Procedimiento Civil, establece los criterios que el tribunal debe considerar al evaluar la procedencia de un *injunction* preliminar, a saber: (1) la naturaleza de los daños a los que está expuesta la parte peticionaria de concederse o denegarse el *injunction*; (2) la irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederse el *injunction;* (5) el posible impacto sobre el interés público del remedio que se solicita; y (6) la diligencia y la buena fe con que ha actuado la parte peticionaria. 32 LPRA Ap. V, R. 57.3; *Ramírez Kurtz y otros v. Damiani Ramos y otros,* 2024 TSPR 97, 214 DPR ___ (2024); *Asociación Vec. v. Caparra v. Asoc. Fom Educ.,* 173 DPR 304, 319-320 (2008).

Por su parte, la norma dispone que los tribunales deben emplear los siguientes criterios en la evaluación de la expedición de un *injunction* permanente: (1) si el demandante ha prevalecido o puede prevalecer en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley o si el *injunction* es el único del cual dispone para vindicar su derecho; (3) el interés público afectado y; (4) el balance de equidades entre todas las partes. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008); *Mun. De Loíza v. Sucs. Suárez et al.,* 154 DPR 333, 367 (2001).

Ahora bien, todos los requisitos antes expuestos, tanto los promulgados por la jurisprudencia interpretativa vigente, como los enumerados en las Reglas de Procedimiento Civil, *supra,* no son

absolutos, sino directrices que emplea el tribunal al momento de decidir si la evidencia ante sí presentada justifica la concesión de un recurso de *injunction. Next Step Medical Co. v. Bromedicon, Inc.*, supra, pág. 487. Por tanto, dicha determinación es una inherente a la sana discreción del tribunal, considerando, tanto los intereses, como las necesidades de las partes involucradas en el caso. *Íd.* El recurso de *injunction* debe expedirse con mesura y únicamente ante una demostración clara e inequívoca de una violación de un derecho. *Íd.* La determinación que al respecto en su día emita el tribunal de hechos, no se revocará en apelación salvo se demuestre que este transgredió los límites impuestos a sus facultades adjudicativas. *Íd.*

**B**

En materia de derecho administrativo, la doctrina de *jurisdicción primaria* está predicada en una norma de prelación jurisdiccional respecto al foro adjudicativo legitimado para atender, en principio, determinada controversia. *Procuradora Paciente v. MCS,* 163 DPR 21, 35 (2004); *Ortiz v. Panel del FEI,* 155 DPR 219, 242 (2001). Siendo así, la misma exige a los tribunales de justicia auscultar el alcance de la ley habilitadora del organismo concernido, a fin de resolver si el asunto en cuestión es uno estrictamente sujeto a su ámbito de especialización. *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 430 (2012). Por tanto, la antedicha norma plantea un esquema de competencia inicial, que opera en función a lo dispuesto en el estatuto regulador de la agencia.

El estado de derecho reconoce que la doctrina de *jurisdicción primaria* se manifiesta en dos contextos independientes: la *jurisdicción primaria exclusiva* y la *jurisdicción primaria concurrente. Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 102 (2020); *Báez Rodríguez et al. v. E.L.A.,* 179 DPR 231, 239 (2010);

*Rivera Ortiz v. Mun. De Guaynabo,* 141 DPR 257, 267 (1996). La jurisdicción primaria exclusiva hace referencia a las ocasiones en que, por virtud de ley, de manera clara e inequívoca, la autoridad de los tribunales queda postergada hasta tanto la agencia concernida entienda primero sobre el asunto. *Beltrán Cintrón et al. v. ELA et al.,* supra. De este modo, por mandato legislativo, los foros judiciales están impedidos de asumir jurisdicción inicial en un asunto que, si bien es por ellos adjudicable, ha sido estricta y exclusivamente delegado a la intervención original del cuerpo administrativo. Ahora bien, la aludida doctrina no impide que la controversia no pueda ser atendida por los tribunales, ya que la parte interesada podrá presentar un recurso de revisión judicial. *Rivera Ortiz v. Mun. De Guaynabo,* supra*, pág. 272; Aguilú Delgado v. P.R. Parking System,* 122 DPR 261, 266 (1988).

Por su parte, la *jurisdicción primaria concurrente* plantea un asunto de *deferencia* a la especialización de las agencias respecto a las materias que le han sido delegadas. Por tanto, los tribunales, aunque estén plenamente facultados para atender la reclamación de que trate, autolimitan su intervención, a fin de que los organismos administrativos empleen su conocimiento experto en aras de llegar a una disposición más precisa. Así pues, aunque ambos foros poseen igual autoridad para atender la controversia pertinente, cuando el asunto a determinarse se fundamenta en cuestiones de hechos complejos, cuya dilucidación requiere cierto grado de pericia, los foros judiciales se abstendrán de ejercer su función adjudicadora, ello al reconocer la adecuacidad de la intervención primaria de la agencia. *Beltrán Cintrón et al. v. ELA et al.,* supra, pág. 103; *Báez Rodríguez et al. v. E.L.A.,* supra, pág. 240; *Rivera Ortiz v. Mun. De Guaynabo,* supra, pág. 268. Sin embargo, el criterio de deferencia antes indicado no opera de manera automática, sino que se extiende conforme a las particularidades y la naturaleza de

cada caso. *Mun. De Caguas v. AT&T,* 154 DPR 401, 411 (2001); *Paoli Méndez v. Rodríguez,* 138 DPR 449, 470 (1995). En este contexto, la doctrina interpretativa en la materia que atendemos reconoce que los siguientes serán algunos de los factores a considerarse al momento de referir la adjudicación de la controversia de que trate al ente administrativo pertinente: 1) la destreza o pericia de la agencia; 2) complejidad y especialidad de la controversia; 3) la prontitud en el proceso de adjudicación y; 4) la viabilidad y flexibilidad de las técnicas de adjudicación. *Ortiz v. Cooperativa de Ahorro y Crédito,* 120 DPR 253, 262 (1987); *Ferrer Rodríguez v. Figueroa,* 109 DPR 398, 402 (1980).

No obstante, nuestro ordenamiento jurídico ha resuelto que "la doctrina de jurisdicción primaria no es una camisa de fuerza", por lo que, en determinadas circunstancias, se ha reconocido su inaplicabilidad. *Consejo de Titulares v. Gómez Estremera et al.,* supra, pág. 430. A tenor con ello, el estado de derecho dispone que la referida norma no opera en toda su extensión cuando la cuestión planteada sea una puramente judicial. Por tanto, la doctrina de jurisdicción primaria habrá de aplicarse en todo caso cuya adjudicación amerite el peritaje de una agencia administrativa, no así cuando la cuestión en disputa sea una de estricto derecho. *Íd.,* pág. 431.

**C**

De otro lado, la Sección 4.2, de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley 38-2017, 3 LPRA sec. 9672, preceptúa que "la parte adversamente afectada por una orden o resolución final de una agencia puede instar un recurso de revisión judicial, siempre y cuando haya agotado todos los remedios administrativos provistos por el organismo administrativo correspondiente". *Simpson y otros v. Consejo de Titulares y otros,* 2024 TSPR 64, 213 DPR ___ (2024). A tenor con

ello, se reconoce que, la doctrina de agotamiento de remedios administrativos, supone un ejercicio de abstención judicial, ello en cuanto al momento idóneo en el cual los tribunales habrán de intervenir en una controversia que aún no ha completado el cauce agencial. *Moreno Ferrer v. JRCM*, 209 DPR 430, 451 (2022); *Colón Rivera v. ELA*, 189 DPR 1033, 1057 (2013); *S.L.G. Flores-Jiménez v. Colberg,* 173 DPR 843, 851 (2008); *Procuradora Paciente v. MCS*, supra, pág. 35; *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey, Inc.*, 155 DPR 906, 916 (2001). Así, y distinto a la norma de jurisdicción primaria exclusiva, la de agotamiento de remedios atiende la etapa en la cual la intervención judicial resulta propicia respecto a un asunto sometido al quehacer adjudicativo de determinado organismo. De este modo, esta doctrina se invoca para cuestionar la acción de un litigante que participó, o participa, de un procedimiento en una agencia y que, sin extinguir todos los recursos disponibles a su favor, acude al auxilio de los foros de justicia. *Moreno Ferrer v. JRCM*, 209 DPR 430, 436 (2022); *AAA v. UIA*, 200 DPR 903, 913 (2018). Por tanto, "lo anterior implica que [una] parte afectada debe utilizar todos los mecanismos disponibles ente la agencia antes de acudir al tribunal". *Simpson y otros v. Consejo de Titulares y otros*, supra; *AAA v. UIA*, supra.

El aspecto de la *temporalidad* constituye la premisa cardinal en la cual se fundamenta la norma sobre el agotamiento de remedios. De esta forma, el ordenamiento jurídico reconoce que su aplicación redunda en lograr que las agencias, previo a la intervención de los tribunales, puedan desarrollar un historial completo y preciso sobre la cuestión sometida a su escrutinio. Por igual, tal incidencia también permite al organismo emplear su conocimiento experto y adoptar las medidas que estime convenientes a la luz de la política pública que tiene a su haber

implantar. *Procuradora Paciente v. MCS,* supra, pág. 35; *Guadalupe v. Saldaña, Pres. U.P.R.,* 133 DPR 42, 49 (1993).

Como norma, la revisión judicial no está disponible hasta tanto el interesado no haya concluido los procedimientos correctivos provistos por la entidad administrativa concernida. Ahora bien, aun cuando agotar todos los remedios administrativos propios de determinado organismo constituye un requisito de carácter jurisdiccional, el ordenamiento jurídico reconoce ciertas excepciones. Ello así, puesto que, bajo ciertas circunstancias, se reconoce que "la exigencia del agotamiento de los remedios [administrativos], no es un principio de aplicación inexorable". *SLG Flores Jiménez v. Colberg,* 173 DPR 843, 852 (2008). Consecuentemente, tanto la ley como la jurisprudencia vigente reconocen las siguientes excepciones: 1) cuando los remedios por parte de la entidad administrativa son inadecuados; 2) cuando requerir el agotamiento de remedios redunda en un daño irreparable al promovente y, en el más justo balance de intereses, no se justifica agotar dichos remedios; 3) cuando medie una alegación sobre violación sustancial de derechos constitucionales; 4) cuando agotar los remedios administrativos resulte en una gestión inútil, ello por la dilación excesiva de los procedimientos; 5) cuando sea un caso claro de falta de jurisdicción de la agencia y; 6) cuando se trate de un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673; *Simpson y otros v. Consejo de Titulares y otros,* supra.

**D**

Por su parte, y en lo pertinente a la materia que atendemos, en su Artículo 1-B, la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 LPRA. sec. 1b, expone las consideraciones generales atinentes a la creación de la Corporación del Fondo de Seguro del Estado, así como

los deberes y funciones del Administrador designado para regir las acciones administrativas y gerenciales requeridas para implantar la política pública de la entidad. En particular, el estado de derecho reconoce que, en virtud de lo dispuesto en la referida Ley, el Administrador del Fondo, está facultado para "organizar y administrar su propio sistema de personal sin sujeción a la ley de personal aplicable a los empleados públicos, pero sujeto al principio de mérito". *Pérez López v. CFSE,* 189 DPR 877, 884 (2013); *González Segarra et al. v. CFSE,* 188 DPR 252, 283-284 (2013). De igual modo, en la ejecución de los poderes que le asisten a fin de administrar su sistema de personal, la gestión pertinente debe regirse por lo dispuesto en las normas reglamentarias adoptadas a tales fines. *González Segarra et al. v. CFSE, supra,* en la pág. 284.

En particular, y a fin de establecer el medio idóneo para canalizar la atención de las controversias que pudieran promoverse por los empleados gerenciales del Fondo, el Reglamento de Personal para los Empleados Gerenciales de la Corporación del Fondo de Seguro del Estado, Reglamento Núm. 6226, *supra,* en su Artículo 18, estatuye la creación y las funciones delegadas al organismo apelativo agencial competente. En específico, reza como sigue:

ARTÍCULO 18-JUNTA DE APELACIONES

Sección 18.1 Creación

Con el fin de atender y resolver en forma diligente, ordenada y justa todas las controversias, quejas y querellas que pudieran surgir por parte de los empleados gerenciales o cualquier persona ajena que entienda que la Corporación o sus funcionarios le han violentado de alguna manera sus derechos respecto a las áreas esenciales al principio de mérito, se crea la Junta de Apelaciones, la cual contará con su propio Reglamento, el cual será aprobado por esta Junta de Directores y el(la) Administrador(a).

Sección 18.2 Funciones

La Función de la Junta será la de servir de organismo apelativo a los empleados gerenciales sobre las decisiones del Administrador, referente a cualquier

acción relacionada a las áreas esenciales al principio de mérito o cualquier acción de carácter disciplinario.

La Junta también tendrá facultad para conocer y resolver apelaciones en caso de ciudadanos que aleguen que una acción o decisión del Administrador respecto al área esencial de reclutamiento viola su derecho a ingresar como empleado gerencial en la Corporación en contravención del principio de mérito.

Por su parte, y en la consecución de lo anterior, mediante la aprobación del Reglamento de Personal de la Junta de Apelaciones de Empleados Gerenciales de la Corporación del Fondo de Seguro del Estado, de 31 de agosto de 1999, se delimitó el alcance de la autoridad arrogada a la Junta de Apelaciones en el cumplimiento de las funciones para las cuales fue creada. Así, en su Artículo 5, el referido Reglamento establece la jurisdicción de la Junta de Apelaciones como sigue:

La Junta será el organismo al cual podrán acudir los empleados gerenciales, para apelar decisiones del Administrador de la Corporación del Fondo del Seguro del Estado, o de la persona en quien éste delegue, en cuanto a:

5.1 Destituciones, suspensiones de empleo, sueldo, beneficios marginales, licencias, cesantías, amonestaciones o cualquier acción de carácter disciplinario o ligados al principio de mérito.

5.2 Controversias relacionadas a la adjudicación de plazas y reclasificaciones.

5.3 Alegaciones de violación del Reglamento de Personal.

5.4 Casos de separación de empleados en período probatorio cuando la acción sea motivada por discrimen de raza, color, sexo, nacimiento, edad, origen o condición social, condición marital, ideas políticas, creencias religiosas o impedimento físico o mental.

5.5 Aquellos empleados que cualifiquen a empleo o ascenso y que aleguen violaciones al principio de mérito en reclutamiento de empleados para el puesto solicitado por ellos.

5.6 La Junta no tendrá jurisdicción en apelaciones provenientes de:

   c. Empleados representados por alguna entidad sindical certificada para negociar

colectivamente con la Corporación, excepto cuando se trate de competencia a un puesto gerencial o desempeño de funciones gerenciales.

b. Empleado de confianza en virtud de las disposiciones de la Sección 6.2 del Reglamento de Personal.

c. Personas que presten servicios en la Corporación en virtud de un contrato.

**E**

Finalmente, como norma general, nuestro ordenamiento procesal civil, requiere que las sentencias dictadas por los tribunales cumplan con ciertas exigencias de forma. *Pérez Vargas v. Office Depot,* 203 DPR 687, 700 (2019). No obstante, el estado de derecho reconoce ciertas excepciones expresas en ley. En específico, la Regla 42.2 de Procedimiento Civil dispone:

> En todos los pleitos, el tribunal especificará los hechos probados, consignará separadamente sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda. Al conceder o denegar *injunction* interlocutorios, el tribunal, de igual modo, consignará las determinaciones de hechos y conclusiones de derecho que constituyan los fundamentos de su resolución. Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Las determinaciones de hechos de un comisionado especial, en tanto y en cuanto el tribunal las adopte, se considerarán como determinaciones de hechos del tribunal.
>
> **No será necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho:**
>
> **(a) al resolver mociones bajo las Reglas 10 ó 36.1 y 36.2**, o al resolver cualquier otra moción, excepto lo dispuesto en la Regla 39.2;
>
> (b) en casos de rebeldía;
>
> (c) cuando las partes así lo estipulen, o
>
> (d) cuando el tribunal así lo estime por la naturaleza de la causa de acción o el remedio concedido en la sentencia.
>
> En los casos en que se deniegue total o parcialmente una moción de sentencia sumaria, el tribunal determinará los hechos en conformidad con la Regla 36.4.

32 LPRA Ap. V, R. 42.2 (Énfasis nuestro).

### III

En la presente causa, la parte apelante señala que el Tribunal de Primera Instancia erró al desestimar su causa de acción bajo el fundamento de que era de aplicación la de jurisdicción primaria de la Agencia concernida, desplazándose, así, la intervención judicial inicial en la controversia de autos. En tal sentido, argumenta que se debió haber aplicado al caso la norma de jurisdicción concurrente. De igual modo, aduce que la sala sentenciadora incidió al desestimar la solicitud de sentencia declaratoria que promovió, ello sin hacer expresión de fundamento alguno. Habiendo examinado los referidos señalamientos, a la luz de la norma aplicable, confirmamos la *Sentencia* apelada.

Un examen de los documentos que nos ocupan mueve nuestro criterio a sostener la corrección de lo resuelto por el tribunal primario. Ciertamente, la intervención judicial inicial en el caso de autos quedó preterida, toda vez que la parte apelante estaba llamada a agotar los remedios adjudicativos provistos por el Fondo, según las normas reglamentarias pertinentes. Ahora bien, previo a fundamentar nuestro dictamen, entendemos menester destacar que, en su recurso, la parte apelante erróneamente aduce que el foro de origen sustentó su determinación en la doctrina relativa a la jurisdicción primaria exclusiva de una agencia administrativa. Sin embargo, aclaramos que el pronunciamiento en controversia es diáfano en cuanto a que el tribunal, declinó expedir la solicitud de interdicto preliminar y permanente, por existir un remedio en ley disponible para atender su causa, ello por vía de los procesos establecidos mediante el cauce apelativo agencial.

Conforme surge, los argumentos de la parte apelante en su solicitud de interdicto y sentencia declaratoria se ciñen a impugnar la creación y convocatoria de un puesto gerencial, ello, teniendo

como premisa una alegada violación al principio del mérito, a las escalas retributivas aplicables y a las disposiciones reglamentarias pertinentes a la idoneidad de los procesos que, en dicha gestión, dirigen el quehacer de la Agencia. Tal cual resuelto, el Reglamento Núm. 6226, *supra*, creó la Junta de Apelaciones del Fondo para, entre otras facultades, atender, considerar y disponer de asuntos relacionados a las referidas alegaciones. A fin de propender a la ejecución de la facultad para la cual fue creado el referido organismo apelativo, el Reglamento de la Junta de Apelaciones de Empleados Gerenciales del Fondo, *supra*, expresamente delimitó el alcance de su autoridad respecto a las controversias sometidas a su consideración. Al respecto, el precitado Artículo 5 del antedicho Reglamento, arroga entera jurisdicción a la Junta de Apelaciones para atender la impugnación de aquellas decisiones emitidas por el Administrador vinculadas al principio del mérito o transgresoras de alguna norma reglamentaria de personal. Siendo así, al existir un remedio en ley, según resuelto, competía a la parte apelante someter la controversia de autos a la consideración del foro apelativo agencial.

De otra parte, en cuanto al señalamiento por el cual la parte apelante aduce que el foro primario erró al desestimar su solicitud de sentencia declaratoria, sin, alegadamente, hacer expresión alguna de los fundamentos jurídicos en los que se basó, distamos de su raciocinio. Tal cual argumenta el Fondo en su alegato en oposición, ninguna infracción procesal puede atribuírsele al foro sentenciador con relación al ejercicio adjudicativo que, en la controversia de autos, efectuó. Según esbozado, la Regla 42.2 de Procedimiento Civil, *supra*, expresamente provee para que, cuando se adjudiquen solicitudes de desestimación fundamentadas en las disposiciones de la Regla 10 de Procedimiento Civil, 32 LPRA Ap. V, R. 10, no resulte necesario especificar hechos probados o consignar

separadamente conclusiones de derecho. Tal disposición fue invocada por el Fondo en su solicitud de desestimación, por lo que, al acogerla, el Tribunal de Primera Instancia, en estricto derecho, no estaba obligado a especificar las razones de su conclusión al respecto. No obstante, apuntamos que la *Sentencia* apelada contiene una exposición específica de hechos y conclusiones normativas que sostienen la suficiencia del pronunciamiento que nos ocupa.

En mérito de todo lo expuesto, sostenemos el dictamen apelado en toda su extensión. Siendo así, el foro administrativo es la entidad llamada a atender los méritos del asunto en el que se fundamenta la acción civil de epígrafe, ello sin menosprecio del eventual derecho de revisión judicial una vez emitido un dictamen agencial final.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones