Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **ZULE BEAUTY LLC**<br><br>Parte Apelada<br><br><br>v.<br><br><br>**THE TOWER AT CONDADO LLC Y OTROS**<br><br>Parte Apelante | KLAN202500079 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala Superior de **San Juan**<br><br>Caso Número: **SJ2024CV10631**<br><br>Sobre:<br><br>**INJUNCTION (Entredicho Provisional, Injunction Preliminar y Permanente)** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 31 de marzo de 2025.

Comparece ante nos, Ramón Acosta Díaz, en adelante, Acosta Díaz, en representación de The Tower At Condado LLC, en adelante, The Tower o apelante, solicitando que revisemos la *"Sentencia Parcial"* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, en adelante, TPI-SJ, el 13 de diciembre de 2024. En la misma, el Foro Apelado declaró *"Ha Lugar"* una acción en su contra, ordenando el cese y desista de continuar perturbando la posesión y tenencia de uno de sus arrendatarios.

Por los fundamentos que expondremos a continuación, *revocamos* la determinación apelada.

### I.

El 25 de marzo de 2024, Zuleika Díaz Reyes, propietaria de Zule Beauty, LLC, en adelante, Zule Beauty o apelada, suscribió un contrato de arrendamiento con la apelante.[1] Mediante el referido

---

[1] Apéndice del recurso, pág. 22.

Número Identificador

SEN2025 _____

acuerdo, The Tower arrendó, para propósitos comerciales, la Suite 101-A a la apelada por un periodo de cinco (5) años.[2] La renta pactada fue de $1,600.00 mensuales, con un incremento del cinco por ciento (5%) anual.[3]

Sin embargo, el 18 de junio de 2024, las partes enmendaron el acuerdo referido, a los fines de incrementar el canon acordado por más espacio comercial.[4] De esta manera, acordaron que el arrendamiento mensual sería de $2,300.00 durante el primer (1) año; $2,425.00 durante el segundo (2) año; $2,499.00 durante el tercer (3) año; $2,587.00 durante el cuarto (4) año; y $2,679.00 durante el quinto (5) y último año.

Unos meses más tarde, la apelante remitió a Zule Beauty una carta, fechada el 1 de noviembre de 2024.[5] En la misma se indicó que esta tenía autorización, por virtud del contrato de arrendamiento entre las partes, a utilizar los locales 101-A y 101-B del primer piso de The Tower. Sin embargo, se expuso que la apelada solicitó utilizar el primer piso completo para sus actividades comerciales, a los que estos le indicaron que, para ello, la renta mensual se elevaría a cuatro mil dólares ($4,000.00). Según la misiva, Zule Beauty también solicitó hacer unos arreglos, para unir los locales del primer piso. Conforme a lo reseñado en la carta aludida, The Tower le indicó que para ello debía suplir unos planos, y cumplir con las leyes y reglamentos aplicables. Concluye la carta dando por terminado el contrato de arrendamiento, por razón de la ocupación alegadamente ilegal de Zule Beauty sobre todo el primer piso de The Tower, y los arreglos hechos sin autorización de la apelante y los permisos del Estado requeridos.

---

[2] Apéndice del recurso, pág. 11.
[3] *Id.*, págs. 11-12.
[4] *Id.*, pág. 22.
[5] *Id.,* pág. 23.

Posteriormente, el 15 de noviembre de 2024, Zule Beauty interpuso una *"Demanda Jurada"* contra The Tower, solicitando que el TPI-SJ emitiera una orden de interdicto posesorio, ordenando que estos últimos desistieran de impedir el uso y disfrute de la propiedad que les arrendaba, además de los daños ocasionados y honorarios por temeridad.[6]

Así, el 18 de noviembre de 2024, el TPI-SJ emitió una *"Orden de Citación a Vista"* para el *10 de diciembre de 2024*.[7] Dispuso, además, que Zule Beauty debía diligenciar el emplazamiento y notificar la orden en cuestión con la *"Demanda Jurada"*, en conformidad con lo dispuesto en el Artículo 692 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3563. También, ordenó a la apelada a acreditar el diligenciamiento en cuestión a la apelante.

Resulta importante señalar que, por su parte, The Tower presentó una *"Demanda"* de desahucio sumario contra Zule Beauty el 25 de noviembre de 2024.[8]

Ahora bien, el *6 de diciembre de 2024*, el gestor Ángel Jurado Montes, en adelante, Jurado Montes, realizó el diligenciamiento ordenado, entregando los documentos pertinentes al agente residente de la apelante, Jayson Ramos, con relación a la demanda de Zule Beauty.[9]

Ese mismo día, la apelada radicó *"Moción sobre Emplazamiento y Desistimiento contra una de las Partes"*.[10] Junto a su moción, anejó una *"Declaración Jurada"* de Jurado Montes, en la que expuso dos (2) gestiones realizadas para poder emplazar a Acosta Díaz.[11] Con esto, Zule Beauty expuso que The Tower había "hecho lo imposible para no ser emplazados y burlar la jurisdicción

---

[6] Apéndice del recurso, pág.
[7] *Id.*, pág. 26.
[8] *Id.*, pág. 29. (SJ2024CV10933).
[9] *Id.*, págs. 56 y 58.
[10] *Id.*, pág. 50.
[11] *Id.*, pág. 52.

de[l] [Foro Primario]".[12] Con relación a la moción precitada, el 10 de diciembre de 2024, el Foro Apelado se dio por enterado, pero en cuanto al desistimiento – contra Acosta Díaz – indicó que se atendería el asunto en la vista pautada para ese día.[13]

Por su parte, el mismo 10 de diciembre de 2024, The Tower radicó una *"Moción Urgente sobre Consolidación de Casos Judiciales"*, en la que solicitó que su demanda por desahucio y la solicitud de interdicto posesorio de Zule Beauty fueran consolidados.[14] A la Vista Evidenciaria sobre el interdicto posesorio, The Tower *no compareció*.[15] Luego de que la apelada presentara su prueba, el Foro Apelado declaró *"Con Lugar"* la demanda de interdicto posesorio, haciendo la salvedad de que el remedio era temporero, hasta tanto se resolviera la demanda de desahucio.[16]

El 12 de diciembre de 2024, la apelante radicó otra *"Moción Informativa y Urgente sobre Consolidación de Casos Judiciales"*.[17] Al próximo día, el Foro Apelado ordenó la consolidación de ambos casos.[18] De igual manera, el 13 de diciembre de 2024, el TPI-SJ emitió una *"Sentencia Parcial"*. Mediante su dictamen, el Foro Primario ordenó a The Tower a desistir de la perturbación sobre la tenencia de Zule Beauty del piso 101, hasta tanto no se resuelva el derecho de poseer, a través de un pleito ordinario. También, autorizó el desistimiento sin perjuicio de la apelante contra Acosta Díaz.

Así las cosas, el 16 de diciembre de 2024, la apelante presentó una *"Moción Impugnando Celebración de Vista sobre Interdicto Posesorio, Reconsideración de Sentencia Parcial y de Orden de Consolidación"*.[19] En la misma, la apelante arguyó que *no fue*

---

[12] Apéndice del recurso, pág. 52.
[13] *Id.*, pág. 59.
[14] *Id.*, pág. 61.
[15] *Id.*, pág. 64.
[16] *Id.*, pág. 65.
[17] *Id.*, pág. 83.
[18] *Id.*, pág. 86.
[19] *Id.*, pág. 98.

*notificada de la vista conforme a derecho*, por lo que procedía dejar la *"Sentencia Parcial"* del 13 de diciembre de 2024 sin efecto. Sin embargo, el 3 de enero de 2025, el Foro Apelado emitió una *"Resolución Interlocutoria"*, declarando *"No Ha Lugar"* la precitada moción de The Tower.[20]

Por otro lado, el 8 de enero de 2025, la apelada presentó una *"Moción en Solicitud de Decreto de Desacato"*, en la que declaró, bajo juramento, que Acosta Díaz y The Tower continuaban perturbando su posesión sobre la propiedad inmueble objeto de la controversia, en contravención a la determinación judicial sobre el interdicto posesorio.[21] Por ello, solicitó al TPI-SJ que decretara el desacato de la apelante y Acosta Díaz. Para atender este asunto, el 27 de febrero de 2025, TPI-SJ señaló vista para el 20 de marzo de 2025.[22]

Inconforme, el 3 de febrero de 2025, The Tower presentó ante esta Curia una apelación, haciendo los siguientes señalamientos de error:

> **PRIMER ERROR:** EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL CELEBRAR LA VISTA DE INTERDICTO POSESORIO OBJETO DEL PRESENTE CASO A PESAR DE QUE LA ORDEN DE CITACIÓN PARA LA REFERIDA VISTA FUE DILIGENCIADA EN LA PERSONA DEL AGENTE RESIDENTE DE LA PARTE APELANTE APENAS CUATRO DÍAS PREVIO A LA CELEBRACIÓN DE LA VISTA, DOS DE LOS CUALES ERAN SÁBADO Y DOMINGO Y EN CRASA VIOLACIÓN AL PROCEDIMIENTO ESTABLECIDO EN EL ARTÍCULO 692 DEL CÓDIGO DE ENJUICIAMIENTO CIVIL, QUE REQUIERE QUE UNA CITACIÓN PARA CELEBRAR UNA VISTA SOBRE INTERDICTO POSESORIO DEBE DILIGENCIARSE CON POR LO MENOS 8 DÍAS DE ANTICIPACIÓN A LA FECHA PAUTADA PARA LA VISTA, ASÍ COMO A LO DISPUESTO EN LA PROPIA ORDEN DE CITACIÓN, LA CUAL ORDENABA QUE EL EMPLAZAMIENTO

---

[20] Apéndice del recurso, pág. 114.
[21] Hacemos constar que este documento, aunque no forma parte del apéndice del recurso, fue anejado posteriormente en una moción de Auxilio de Jurisdicción.
[22] SUMAC, Entrada Núm. 73.

Y LA NOTIFICACIÓN DE VISTA SE LE DILIGENCIASE EN O ANTES DEL 1RO DE DICIEMBRE DE 2024.

**SEGUNDO ERROR:** EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL VIOLARLE EL DEBIDO PROCEDIMIENTO DE LEY A LA PARTE APELANTE CELEBRANDO UNA VISTA DE INTERDICTO POSESORIO SIN SU PRESENCIA Y POR ENDE EN REBELDÍA, A PESAR DE NO HABER SIDO CITADA DENTRO DEL TÉRMINO QUE DISPONE EL ESTATUTO QUE REGULA LA ACCIÓN DE INTERDICTO POSESORIO Y DE LO ORDENADO EN LA PROPIA ORDEN DE CITACIÓN, NEGÁNDOLE CON ELLO EL DERECHO DE ASISTIR DEBIDAMENTE PREPARADO A LA VISTA DE INTERDICTO POSESORIO, DE PODER CONFRONTARSE CON LA PRUEBA DE LA PARTE CONTRARIA Y A SU VEZ DE PODER PRESENTAR PRUEBA A SU FAVOR.

**TERCER ERROR:** ERRÓ EL TPI AL CONSOLIDAR EL CASO DE INTERDICTO Y RECLAMACIÓN DE DAÑOS CON EL CASO DE DESAHUCIO EN PRECARIO QUE HABÍA PRESENTADO LA APELANTE, SOBRE TODO POR LA OCUPACIÓN SIN CONTRATO DEL ESPACIO ADICIONAL, CIVIL NÚM. SJ2024CV10933 POR SER LA REFERIDA ORDEN PREMATURA Y/O CONTRARIA A DERECHO.

Mediante *"Resolución"* del 5 de febrero de 2025, le concedimos a la apelada hasta el 5 de marzo de 2025, para presentar su posición en cuanto al recurso. En cumplimiento de orden, Zule Beauty presentó ante nos su *"Alegato de la Parte Demandante Zule Beauty, LLC"*.

Más adelante, el 5 de marzo de 2025, la apelante presentó una *"Moción en Auxilio de Jurisdicción"* solicitando la paralización de la vista del 20 de marzo de 2025. Mediante *"Resolución"* del 6 de marzo de 2025, declaramos *"Ha Lugar"* la solicitud en Auxilio de Jurisdicción, ordenando así la paralización de los procesos ante el TPI-SJ.

Perfeccionado el recurso de epígrafe, y con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

**II.**

**A. Apelación Civil**

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán et al. v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Véase, además, *Freire Ruiz de Val v. Morales Román*, 2024 TSPR 129, 214 DPR ___ (2024). Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

### B. Interdicto Posesorio

El interdicto posesorio o *'injunction'* es un procedimiento especial dirigido a proteger al promovente de daños irreparables a su propiedad o a otros derechos mediante una orden que prohíba u ordene ejecutar ciertos actos, gobernado así por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y por los Artículos 675 al 678, 686 al 687 y en 690 al 695 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521-3524, 3532-3533 y 3561-3566. Este remedio extraordinario "se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico". *Peña v. Federación de Esgrima de P.R.*, 108 DPR 147, 154 (1978). Véase, además, *Meléndez de León v. Keleher*, 200 DPR 740, 755 (2018); *Miranda Cruz y otros v. SLG Ritch*, 176 DPR 951, 960 (2009); *Plaza Las Américas v. N&H*, 166 DPR 631, 643 (2005).

El interdicto es un remedio discrecional que ha de concederse con cautela, luego que el promovente demuestre la existencia de los requisitos para su expedición y que el tribunal realice un balance de conveniencias y equidades. Código de Enjuiciamiento Civil, supra, sec. 3523. Entre los requisitos para su expedición se encuentran la

irreparabilidad del daño, la existencia de un remedio adecuado en ley y la probabilidad de prevalecer. *Mun. de Loíza v. Sucns. Suárez et al.,* 154 DPR 333, 367 (2001).

El Foro Primario podrá conceder un '*injunction*' cuando la parte demandante logre demostrar "que ha sido perturbada en la posesión o tenencia de dicha propiedad por actos que manifiesten la intención de inquietarle [...]". Código de Enjuiciamiento Civil, supra, sec. 3561. Para ello, la parte que solicita este remedio deberá presentar su petición – redactada y jurada – ante el Foro Primario, si estuvo en posesión real de la propiedad objeto de la demanda y ha sido perturbado en dicha tenencia. Código de Enjuiciamiento Civil, supra, sec. 3562.

Es preciso señalar que, el interdicto posesorio es una acción de naturaleza sumaria, donde solo se discute la posesión del inmueble, sin entrarse en cuestiones relativas al título. J.R. Vélez Torres, *Los derechos reales*, San Juan, Puerto Rico, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1995, T. II, a la pág. 133. Es preciso advertir, además, que las sentencias que conceden un interdicto posesorio no constituyen cosa juzgada, pues estas no tienen el efecto de adjudicar la titularidad del bien inmueble controvertido. *Miranda Cruz y otros v. S.L.G. Ritch*, supra, págs. 967-968.

Por otro lado, los tribunales apelativos, al evaluar el dictamen del foro que revisan, sobre la asertividad o no de un *injunction preliminar*, deben determinar si el foro revisado "abusó de su discreción al sopesar los intereses en juego y emitir la orden de *injunction preliminar*". *Mun. de Ponce v. Gobernador*, 136 DPR 776, 785 (1994). Esta es la función revisora, pues "[l]a concesión de un *injunction preliminar* descansa en el ejercicio de una sana discreción judicial". *Id.*, pág. 790. Véase, además, *Ramirez Kurt v. Damián Ramos*, 2024 TSPR 97, 214 DPR ___ (2024).

### C. Emplazamientos en procesos de 'injunctions'

Atado el emplazamiento al mismo aspecto neurálgico de la jurisdicción del tribunal y a la oportunidad de ser oído, es reiterada la norma jurisprudencial al efecto de exigir su debido cumplimiento. *Torres Zayas v. Montano Gómez et als.*, 199 DPR 458, 467 (2017); *Cirino González v. Adm. Corrección*, 190 DPR 14, 30 (2014); *Márquez Resto v. Barreto Lima*, 143 DPR 137, 142 (1997). Así pues, para que una persona sea considerada *parte* de un pleito es necesario que sobre dicha persona se haya adquirido jurisdicción. *Sánchez Rivera v. Malavé Rivera*, 192 DPR 854, 874-875 (2015); *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 483 (2019); *Torres Zayas v. Montano Gómez et als.*, supra, pág. 467; *Álvarez v. Arias*, 156 DPR 352, 365-366 (2002); *Acosta v. ABC, Inc.,* 142 DPR 927, 931 (1997). Ello ocurre, mediante el diligenciamiento del emplazamiento.

El emplazamiento es el mecanismo procesal a través del cual se le informa a la parte demandada que se presentó una acción judicial en su contra, y de esta manera, preparar su defensa. *Ross Valedon v. Hosp. Dr. Susoni et al.*, 213 DPR 481, 487 (2024); *Pérez Quiles v. Santiago Cintrón,* 206 DPR 379, 384 (2021); *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 480 (2019); *Bernier González v. Rodríguez Becerra*, 200 DPR 637, 644 (2018). Por tal razón, toda parte demandada tiene derecho a que su emplazamiento sea efectuado conforme a derecho. *Sánchez Rivera v. Malavé Rivera*, supra, pág. 869. Además, el Tribunal Supremo ha señalado que la falta de diligenciamiento del emplazamiento priva al tribunal de jurisdicción sobre la persona e invalida cualquier sentencia en su contra. *Rivera Marrero v. Santiago Martínez,* supra, pág. 483.

Ahora bien, relevante a la materia en autos, destacamos que la normativa que encauza los aspectos procesales del *'injunction'*, regulan de manera específica el emplazamiento adecuado. A estos

efectos, el Artículo 692 del Código de Enjuiciamiento Civil, supra, sec. 3563, dispone lo siguiente:

> El tribunal fijará fecha para el juicio en dicha demanda, el cual tendrá lugar dentro de los quince (15) días subsiguientes, ***debiéndose emplazar al demandado ocho (8) días antes***, ***cuando menos***, al fijado para el juicio.

Ahora bien, de lo antes expuesto, se desprende que para proceder en una causa de acción de interdicto posesorio, el peticionario que lo exige debe emplazar conforme a derecho a la otra parte, con el fin de poder celebrar la vista para adjudicar. No obstante, si bien es cierto que el precitado Artículo presupone la celebración de un juicio para conceder o denegar un interdicto posesorio, con todas las enramadas procesales que ello implica, nuestro Tribunal Supremo ha interpretado que el Foro Primario puede desviarse de estos términos y conceder el remedio solicitado. *Valle v. Arroyo*, 59 DPR 171 (1941). Esto último, siempre y cuando la parte solicitante incluya en su petitorio todas las alegaciones requeridas por el Artículo 691 del Código de Enjuiciamiento Civil, supra, sec. 3561.

Posteriormente, en *Disdier Pacheco v. García*, 101 DPR 541, 546 (1973), nuestro Tribunal Supremo destacó la naturaleza sumaria del interdicto posesorio y explicó que su ejercicio no debe "estar sujeto a los vaivenes de mociones, vistas y medios de descubrimiento de prueba que, si deseables en las acciones ordinarias, sin duda frustrarían el propósito de que el hecho de la posesión sea resuelto y adjudicado sin dilación y dentro de los términos que específicamente prescribe el Art. 692 [del Código de Enjuiciamiento Civil, supra, sec. 3563]".

**III.**

The Tower comparece ante nos impugnando la *"Sentencia Parcial"* del TPI-SJ, en la que concedió el *interdicto posesorio*

solicitado por Zule Beauty, en su contra. Por estar íntimamente relacionados los errores, los discutiremos en conjunto. En síntesis, alega la apelante que el Foro Primario erró al celebrar la vista evidenciaria del interdicto posesorio, y concederlo. Esto, cuando no fue emplazada conforme a derecho, y no compareció, ni se pudo preparar para comparecer, a la vista. *Le asiste la razón.*

Es necesario comenzar nuestra exposición aclarando que, el caso de marras ante nuestra consideración no versa sobre la adjudicación final del interdicto posesorio en cuestión. Es decir, no estamos llamados a evaluar si el cese y desista contra la apelante se ordenó conforme a derecho. Lo cierto es que estamos ante un problema jurisdiccional, donde, a nuestro juicio, el Foro Primario nunca adquirió jurisdicción sobre The Tower.

Sabido es que el remedio provisional del *'injunction'* es uno de carácter sumario, y debe ser tramitado de manera expedita y sin dilaciones. Sin embargo, esta realidad no enturbia el derecho fundamental, arraigado en el debido proceso de ley, que tiene una parte de ser notificada conforme a derecho de cualquier causa de acción en su contra. Es decir, el carácter sumario del interdicto posesorio *no puede soslayar el diligenciamiento del emplazamiento*.

Lo cierto es que nuestro Alto Foro ha reconocido, y así parece sugerirnos la apelada en su alegato, que los términos para emplazar del Código de Enjuiciamiento Civil, supra, pueden sufrir un baipás siempre que se cumplan los criterios de la demanda, y de esta manera, no dejar su concesión a la merced de los asuntos procesales que engloban los procedimientos ordinarios. Justipreciamos que entre estas, se encuentra la asunción de jurisdicción de las partes.

Es precisamente esto último, lo que tenemos ante nuestra consideración. Luego de recibir la solicitud del *'injunction'*, el TPI-SJ no lo otorgó de manera ex parte, sino que citó para vista y ordenó que se diligenciara el emplazamiento de conformidad con el Artículo

692 del Código de Enjuiciamiento Civil, supra. Según la normativa antes esbozada, es de esta manera que el Foro Primario adquiere jurisdicción sobre la persona contra la cual se solicita el interdicto posesorio.

Como podemos ver, el emplazamiento de la apelada *no se realizó en el término de ocho (8) días previos a la celebración de la vista*, según dispone el Código de Enjuiciamiento Civil, supra. Por el contrario, de los hechos surge claramente que Zule Beauty emplazó y notificó a The Tower *cuatro (4) días antes de la vista*, es decir, tardíamente. Subrayamos, además, que estos cuatro (4) días, dos (2) eran fin de semana.

Por tanto, debemos concluir que el foro primario erró al continuar con la celebración de la vista sin la comparecencia del apelante, y concluir en su *"Sentencia Parcial"* que este fue debidamente emplazado. Con sus acciones, privó a la apelante de su derecho a ser notificado del proceso presentado en su contra, ser oído y defenderse.

## IV.

Por los fundamentos antes detallados, *revocamos* la *"Sentencia Parcial"* impugnada, *levantamos la paralización* dictada y *devolvemos* el caso al Foro Apelado para que continúen los procedimientos de emplazamiento, conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones